Anthony ALBANESE, Plaintiff,

v.

N. V. NEDERL. AMERIK STOOMV.
MAATS., Defendant.

N. V. NEDERL. AMERIK STOOMV.
MAATS., Third-Party Plaintiff,

v.

INTERNATIONAL TERMINAL OPER-
ATING CO., Inc., Third-Party
Defendant.

No. 61 Civ. 1086.

United States District Court
S. D. New York.

June 9, 1967.

Purdy, Lamb & Catoggio, New York City, of counsel to Schaffner & Furey, New York City, for third-party plaintiff; Edmund F. Lamb, New York City, of counsel.

Alexander, Ash & Schwartz, New York City, for third-party defendant; Joseph Arthur Cohen, New York City, of counsel.

## OPINION

LEVET, District Judge.

After a verdict by the jury in favor of the third-party defendant, International Terminal Operating Co., Inc. ("ITO"), the third-party plaintiff, N. V. Nederl. Amerik Stoomv. Maats. ("Holland America Line"), has moved to set said verdict aside for judgment in favor of Holland America Line notwithstanding the verdict, or, in the alternative, for a new trial.

This claim arises by reason of the fact that the plaintiff, Anthony Albanese, a longshoreman, obtained a verdict and collected a judgment against Holland America Line for the sum of $145,000 by reason of injuries from carbon monoxide fumes while working in his occupation in the hold of the M. S. Schiedyk, owned by Holland America Line. This judgment, with interest and costs, was satisfied for $160,497.33 by Holland America Line.

## TRIAL AND APPEALS

This case was originally tried before Judge Cooper with a jury and verdicts returned for Albanese against Holland America Line as defendant and against Holland America Line as third-party plaintiff in favor of ITO as third-party defendant. Holland America Line appealed both verdicts and the Court of Appeals reversed both, 346 F.2d 481 (2nd Cir. 1965). Albanese, ITO and Holland America Line all applied for certiorari. In a per curiam opinion, the Supreme Court accepted certiorari and reversed the Court of Appeals decision as to Albanese, but denied the petitions for certiorari by ITO and Holland America Line, 382 U.S. 283, 86 S.Ct. 429, 15 L.Ed.2d 327 (1965). It denied the petition for a rehearing on the Albanese decision, 382 U.S. 1000, 86 S.Ct. 534, 15 L.Ed.2d 490 (1966), and denied rehearing on the denial of ITO's petition for certiorari, International Terminal Operating Co. v. N. V. Nederl. Amerik Stoomv. Maats 382 U.S. 1030, 86 S.Ct. 644, 15 L.Ed.2d 544 (1966). It also denied ITO's motion for leave to file a second petition for a rehearing, 384 U.S. 994, 86 S.Ct. 1884, 16 L.Ed.2d 1011 (1966). The Court of Appeals, however, thereafter refused to withdraw its mandate for a new trial between Holland America Line and ITO.

It is appropriate to point out that the jury verdict on this retrial was in accord with previous determinations.

1. At the first trial, Judge Cooper denied a motion for a directed verdict against ITO (SM 926, first trial); [1]

2. The jury's verdict at the first trial before Judge Cooper was in favor of ITO;

3. Judge Cooper denied a motion of Holland America Line for judgment N.O.V. against ITO;

4. The Court of Appeals of this circuit rejected the argument of Holland America Line that it was entitled to a verdict against ITO as a matter of law, 346 F.2d 481;

5. The United States Supreme Court denied the cross-petition of Holland America Line for certiorari seeking the same relief, 382 U.S. 283, 86 S.Ct. 429, 15 L.Ed.2d 327;

6. After reinstatement of the Albanese verdict by the Supreme Court, 382 U.S. 283, 86 S.Ct. 429, Holland America Line argued to the Court of Appeals for the Second Circuit that it was entitled to a judgment as a matter of law; the motion was denied on March 1, 1966;

7. Undaunted, on September 28, 1966, Holland America Line moved for summary judgment before Judge Tyler of the District Court. Judge Tyler denied the motion.

As a result, the claim of Holland America Line for certiorari seeking the retrial and was heard by court and jury. A verdict for ITO resulted.

## THE RETRIAL

At the retrial the jury was instructed to answer "Special Interrogatories" which were as follows:

## "SPECIAL INTERROGATORIES FOR THE JURY

(Please answer the following questions. Unanimous agreement is necessary before an answer may be recorded.)

1. Has the defendant International proved by a fair preponderance of the credible evidence that a mate or an of-

---

1. Numbers in parenthesis, not otherwise identified, refer to pages in the stenographer's minutes of the second trial.

ficer of the vessel, MS Schiedyk, on February 25, 1961 at about 11:00 A.M., told Curko, the hatch boss for International, that he would turn on the ship's blower in the #2 hatch and that the said officer or mate at that time told Curko to proceed with the work in the #2 hatch?

———— ————
Yes       No

If your answer is "Yes," proceed to Question #2.

2. Has the defendant International proved by a fair preponderance of the credible evidence that on February 25, 1961 International reasonably relied on this promise in proceeding to continue to work in the hold?

———— ————
Yes       No"

Counsel for Holland America Line made no objections. (296–98) The jurors were also directed to return a general verdict for plaintiff or for defendant.[2] (398) The jury eventually gave affirmative answers to both questions in the Special Interrogatories. The general verdict was for defendant.

The jury retired to deliberate at 2:58 P.M. (414) At about 4:45 the jury sent in a question reading: "What was the purpose of the special interrogatories as to the jury?" (415) The court instructed the jury:

(a) "These are asked merely for informational purposes to assist the Court."

(b) "These are not the only issues for your consideration; there may be others."

(c) And the court again instructed the jury that a general verdict was also required. (416)

After further discussion with counsel about the Special Interrogatories (417–18), the court recalled the jurors and instructed them as follows:

"As the result of certain considerations by the Court of your question, I have decided to tell you this: In the event that you should—I don't say either way on this—if you should come to a determination that there is no breach of the warranty of workmanship and so forth as I explained to you the basic issue was, you find there is no breach, then you need not determine these other questions. If you find, however, that there is a breach, you may determine the interrogatories, the questions which I submitted, I hope that is clear to you. If it isn't, write a note to me, Mr. Foreman. You may retire." (418)

At 5:30 P.M. on Friday, April 21, 1967, there being no verdict, I dismissed the jury for the day, with appropriate instructions, and directed the jurors to return for further deliberations on Monday, April 24, 1967. (419) Through certain circumstances, which I narrated to counsel on the 24th and which are delineated in the record, the fact that the jury had already voted upon and signed the Special Interrogatories came to my attention. (420–21) Without telling counsel which way the jury had voted, I fully explained this situation, saying:

"  *  *  *  None of us I believe recognize(d) that the jurors could have already answered the interrogatories and signed the interrogatories on Friday afternoon. For the present, gentlemen, I do not think it is necessary for me to tell you how they voted. As I see it, that would become significant only if it later appears that the jury tells us that it is deadlocked.  *  *  *

"Now, my idea is that we should leave it as it is, and if any such deadlock situation appears, I will consult with you as to what to do, and I can't think of any other reason in which revelation would be necessary or the lack of it in any way prejudicial.  *  *  *  "  (421–22)

When the jury returned on April 24th for further deliberation, I reiterated my instructions to them in these words:

"I have asked you to come in [i. e., into the court room] this morning

---

2. The amount was stipulated by the parties.

merely in order that I may augment and fill out what I said Friday with respect to the special interrogatories. I tell you now that you need not answer these special interrogatories if you find that the plaintiff has not sustained its burden with respect to a breach of the warranty of workmanlike performance and that the plaintiff as the result has sustained damages; that is, if those two items have not been proved. On the other hand, if you find that the plaintiff has sustained its burden as to these features, then you must go on and consider the affirmative defense and answer the interrogatories." (430)

With respect to the Special Interrogatories, I also stated:

"* * * I sealed the interrogatories and I have kept them in my chambers locked, without any further revelation of any kind. I return these to you, and I merely charge you that if you find that you do not need, under my instructions, to turn these in, you may seal them in this envelope and return to the clerk when you make your general verdict.
  *       *       *       *       *       *

"The foreman may initial the envelope." (430–31)

At 11:35 A.M. the jury returned its general verdict for the defendant. (431) Then the following proceedings took place:

"THE COURT: Did you find that the answers were or were not necessary?

"THE FOREMAN: We answered them anyway, your Honor. We had answered them previously. I don't know if that was right, but we had.

"THE COURT: Well, I was in hopes you had decided whether or not certain things were true. Will the lawyers approach the bench at the side bar.

"(At the side bar.)

"(Discussion off the record.)

"(In open court.)

"THE COURT: We will ask the foreman to submit the special interrogatories to the clerk.

"Shall I poll the jury as to both the general verdict and the interrogatories?

"MR. LAMB: I think so, your Honor.

"THE COURT: Mr. Cohen?

"MR. COHEN: I don't request it, your Honor.

"THE COURT: Do you have any objection?

"MR. COHEN: No, sir.

"THE COURT. Very well, poll the jury as to the general verdict.

"THE CLERK: Gentlemen of the jury, listen to your verdict as it stands recorded. You say you find a verdict for the defendant?

"(Jury polled and all jurors answered in the affirmative.)

"THE COURT: Will you also open the special interrogatories and poll the jury on those.

"THE CLERK: Gentlemen of the jury, listen to your special interrogatories. Number 1, your verdict is yes. Number 2, yes.

"(Jury polled and all answered in the affirmative.)" (431–33)

I.

THE EFFECT OF THE VERDICT

■ The general verdict having been for the defendant and the jury having found by the Special Interrogatories (1) that an officer told the hatch boss that he would turn on the ship's blower in the No. 2 hatch, and (2) that ITO reasonably relied on such promise, I must conclude, since defendant is thus entitled to the most favorable assumptions, that the jury determined (1) that there was no breach of warranty, and (2) that the affirmative defense by ITO was sustained.

## II.

## THE MOTION FOR JUDGMENT N.O.V.

■ Holland America Line moves for judgment N.O.V. on the ground that the facts relied upon by ITO are insufficient for a defense as a matter of law. The general rule, however, is that whether a stevedore has breached its warranty of workmanlike performance and whether the shipowner's conduct precludes indemnity are primarily factual, not legal, questions. Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 358, 82 S.Ct. 780, 7 L.Ed.2d 798 (1962); Weyerhaeuser S.S. Co. v. Nacirema Operating Co., 355 U.S. 563, 567–568, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958); Waterman S.S.Corp. v. David, 353 F.2d 660, 666 (5th Cir. 1965), cert. denied, 384 U.S. 972, 86 S.Ct. 1863, 16 L.Ed.2d 683 (1966); Parker v. United States, 223 F.Supp. 647, 650 (D.Ore.1963).

■ It cannot be said as a matter of law that ITO breached its obligation to perform its work "with reasonable safety," Weyerhaeuser S.S. Co. v. Nacirema Operating Co., 355 U.S. 563, 565, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958), by continuing to work in the hold, when it had reasonable grounds to believe that the ship's ventilation system would be turned on imminently, at least until it appeared that this expectation would not be fulfilled. The verdict of the jury indicates that ITO did not rely on this expectation any longer than was reasonable and such a finding has support in the evidence.

■ The continuance of the work in pursuance of the orders of the Mate clearly constituted a sound ground for the jury's verdict. Thompson v. Trent Maritime Co., 353 F.2d 632, 641 (3rd Cir. 1965); Moore-McCormack Lines, Inc. v. Maryland Ship Ceiling Co., 311 F.2d 663 (4th Cir. 1962); Hodgson v. Lloyd Brasileiro Patrimonio Nacional, 294 F.2d 32 (3rd Cir. 1961), cert. denied, 369 U.S. 848, 82 S.Ct. 931, 8 L.Ed.2d 8 (1962); Cf. Delaney v. Towmotor Corp., 339 F.2d 4, 7 (2nd Cir. 1964). In Thompson, supra, Ganey, Circuit Judge, wrote:

"* * * It has been recognized that indemnity may be denied when the shipowner or those operating the vessel participate in some way in the decision to work in an unseaworthy area of the ship or induces the stevedore to go on with the work. Hagans v. Farrell Lines, Inc., 237 F.2d 477 (C.A. 3, 1956); Hodgson v. Lloyd Brasileiro Patrimonio Nacional, 294 F.2d 32 (C.A. 3, 1961); United States v. Harrison, 245 F.2d 911 (C.A. 9, 1957). * * *" 353 F.2d at 641.

Furthermore, the jury was clearly instructed that, to render a verdict for ITO on the ground that the conduct of Holland America Line precluded recovery, they would have to find that such conduct constituted more than merely concurrent fault, but that it prevented or seriously handicapped the stevedore in his ability to do a workmanlike job. The verdict indicates that they did so find as a matter of fact, and the evidence is sufficient to support this finding. In this regard, it is irrelevant that ITO had general control of the stevedoring operations or that it had other means of protecting the longshoremen, because the crucial element was time. ITO did take the protective measure of calling its men out of the hold, but it acted too late, and the cause of its delay was the conduct of Holland America Line's Mate. It was not unreasonable for the jury to find that the statements of the Mate temporarily convinced ITO that protective measures on its part were unnecessary, thus seriously hindering ITO in fulfilling its warranty, and that ITO acted with sufficient promptness when it became apparent that the Mate would not fulfill his promise.

■ Such conduct may be profitably analyzed in terms of waiver or equitable estoppel. The ship's Mate led the stevedores to believe that the ventilation would be turned on, intending that they should rely on that promise, and, in order to get the ship loaded quickly to the profit of the shipowner, requested or or-

dered the stevedores to continue working. As the Supreme Court has said:

"The vital principle is that he who by his language or conduct leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted." Dickerson v. Colgrove, 100 U.S. 578, 580, 25 L.Ed. 618 (1879).

In this case, as the jury specifically found, the Mate clearly induced the stevedores to continue working when the stevedores were prepared to leave the hold, the stevedores relied on the Mate's promise, and their reliance was reasonable. Under such circumstances, it would be inequitable to allow the shipowner to complain now that the stevedore complied with his request and relied on his promise.

None of the authorities cited by Holland America Line are appropriate. No basis for a directed verdict exists. The verdict is not contrary to law or to the evidence.

### III.

### THE MOTION FOR A NEW TRIAL

■ Regulation 9.93 of the Safety and Health Regulations was properly admitted. In Ray v. Compania Naviera Continental, S. A., 203 F.Supp. 206, 210 (D. Md.1962), Judge Watkins stated:

" * * * The pamphlet constitutes the 'Bible' of the stevedoring industry. Hence the court accepts section 9.25 as defining what is reasonably required in the trade. * * * "

■ Regulations are at least some evidence of what is good practice. Manning v. M/V Sea Road, 358 F.2d 615, 618 (5th Cir. 1966); Reid v. Quebec Paper Sales & Transp. Co., 340 F.2d 34, 35 (2nd Cir. 1965); Provenza v. American Export Lines, Inc., 324 F.2d 660, 665–666 (4th Cir. 1963), cert. denied, 376 U.S. 952, 84 S.Ct. 970, 11 L.Ed.2d 971 (1964); Chevis v. Luckenbach Overseas Corp., 228 F. Supp. 642, 649, 651 (E.D.Tex.1964); Gainar v. SS Longview Victory, 226 F.

Supp. 912, 914–915 (E.D.Va.1964), aff'd sub nom. Thornton v. Victory Carriers, Inc., 338 F.2d 959 (4th Cir. 1964).

With respect to the regulations, the court charged in part:

"These regulations as between these parties—that is, between the ship and a stevedore, are not fully determinative. The mere failure of a ship to test or to turn on the blowers without doing more is not a defense to the stevedore." (375)

■ With reference to the complaint of Holland America Line as to the admission of statements of the hatch boss to an alleged officer or Mate of the ship, the court charged in part as follows:

"The burden, however, is on the defendant to show that these statements were made, and to show that they were made to an officer, and that the reliance on these statements was reasonable and materially affected the ability of the stevedore to do a workmanlike job." (377)

The conversation was admissible. As pointed out in the discussion of the motion for judgment N.O.V., it is relevant to a valid defense. I must conclude that the jury believed that the person was an officer (see Special Interrogatory No. 1).

■ Holland America Line argues that it was error to admit the stevedoring contract into evidence. Without reaching the question of relevance, however, it has not shown that it has been prejudiced by the admission. With regard to this and other evidence, it claims that counsel for ITO misled the jury in his closing argument, but counsel for Holland America Line made no objection at that time and he had ample opportunity to rebut such arguments in his own subsequent closing statement.

■ Holland America Line urges that the court permitted the jury to bring in a verdict inconsistent with the evidence on the prior trial. Obviously, the effect of the first trial, as far as issues

between these parties were concerned, was limited. In the charge I stated:

"As the result of that verdict in favor of Albanese, the following issues may be deemed to have been settled:

"(1) Albanese was injured by reason of carbon monoxide fumes in the lower hold of the No. 2 hatch;

"(2) The source of these fumes was the hi-lo or some people call it the forklift machine used by International in the hold performing services in connection with the loading of the ship;

"(3) The verdict therefore indicates that the jury concluded that the cause of injuries was the carbon monoxide produced by hi-los in the lower hold of the No. 2 hatch.

"Of course, [the] hi-los concededly were those owned and operated by the defendant.

"However, this verdict did not pass upon the issue of liability except as between Albanese and Holland-America. Nor did it pass upon the liability of International to Holland-America line by reason of any possible breach of warranty of workmanlike performance, nor did it pass on any defense of International as against Holland-America Line." (379–380)

This was a new trial arising because of determinations on appeal as above stated. Aside from the limitations on issues as above stated, there was no reason to restrict the proof as to relevant issues in the indemnity claim. No testimony inconsistent with the basic determinations of the first trial was admitted.

 Holland America Line also objects to various refusals to charge as requested, particularly with regard to the effect of the verdict at the first trial between Albanese and Holland America Line as defendant. As to this, it should be noted that the doctrine of collateral estoppel applies only to facts and issues necessary to a judgment and not to merely evidentiary facts. Restatement of Judgments § 68, comments o and p, at 309–12 (1942). There has been no showing that any of the facts which the court refused to charge were necessary to the judgment between Albanese and Holland America Line.

The shipping company appears to argue that the mere fact that the injuries came to Albanese because of fumes from ITO thereby demands indemnity to Holland America Line and thus disregards the clear conclusion of the jury at retrial that ITO reasonably relied on the ship to operate the blowers to clear the hold.

On this particular issue, after placing the burden upon ITO to show conduct on the part of the shipowner which would relieve the stevedoring company of its duties under the warranty, I charged:

"However, it is not enough on the part of the stevedore to show concurrent, that is, at the same time, or simultaneous fault. The conduct of the shipowner must be such as to prevent or seriously handicap the stevedore in its ability to do a workmanlike job." (376–77)

I find no reason to grant a new trial. Both motions are denied.

So ordered.