John MILOS, Plaintiff,

v.

SEA–LAND SERVICE, INC., and R. J. Reynolds Industrial Leasing Corporation, Defendants.

No. 76 Civ. 1848 (IBC).

United States District Court, S. D. New York.

Sept. 25, 1979.

Schneider, Kleinick, Friedman, Miller & Weitz, New York City, for plaintiff; Theodore H. Friedman, New York City, of counsel.

Walker & Corsa, New York City, for defendant Sea-Land Service, Inc.; Joseph T. Stearns, New York City, of counsel.

## OPINION

IRVING BEN COOPER, District Judge.

Defendant moves for a new trial, pursuant to Rule 59, Federal Rules of Civil Procedure, and asks for judgment notwithstanding the verdict, in accordance with the provisions of Rule 50, F.R.Civ.P. Defendant objects to the jury verdict entered June 13, 1979, awarding $360,000 in damages to plaintiff in this action under the Jones Act and the general maritime law. Defendant claims the verdict went against the weight of the evidence; that there were errors of law made at the trial; that the verdict was excessive and that certain actions of the court and counsel caused prejudicial error. Plaintiff has responded with a thorough and cogent defense of the verdict.

■ In our view, defendant has failed to meet the standard which would compel this court to set aside the verdict under Rule 50. That standard is the same as the requirement for directing a verdict at the close of the evidence, which relief we denied upon defendant's request for it at that time. (Transcript, p. 1285). *Simblest v. Maynard*, 427 F.2d 1 (2d Cir. 1970). Nothing has occurred to alter our decision.

■ Turning to the motion for a new trial, it is clear that the requirements for granting such a motion are not nearly so strict as those applicable to Rule 50. A verdict may be set aside under Rule 59, even if there was substantial evidence to support that verdict, if the court finds the verdict was against the weight of the evidence, or so excessive as to shock the conscience of the Judge. "Courts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done." 11 Wright & Miller, Federal Practice and Procedure: Civil § 2803.

■ The granting or denial of the motion lies almost exclusively within the discretion of the trial judge; his evaluation of the claim must compel the conclusion that justice has not been accomplished by the trial verdict. In a jury case, the exercise of that discretion is somewhat circumscribed: "[A] decent respect for the collective wisdom of the jury, and for the function entrusted to it in our system, certainly suggests that in most cases the judge should accept the findings of the jury, regardless of his own doubts in the matter." *Id.*, § 2806.

■ If the trial court determines that the verdict in a case is excessive, it can order a new trial *in toto* or on the issue of damages alone. Additionally, "[T]here is a practice by which the court may condition a denial of the motion for a new trial upon the filing by the plaintiff of a remittitur in a stated amount. In this way, the plaintiff is given the option of either submitting to a new trial or of accepting the amount of damages that the court considers justified." *Id.*, § 2807; *Dullard v. Berkeley Associates Co. et al.*, 606 F.2d 890, at p. 896 (C.A.2d 1978).

■ Alleged misconduct will not support a motion for a new trial, in most cases, either because the conduct complained of was not misconduct, or was not prejudicial, or was not objected to at the time, or because any prejudice was cured by the instructions of the court. Wright & Miller, *supra*, § 2809; F.R.Civ.P. 61.

■ Upon examination of the record at trial and a review of the law applicable to seaman's personal injury cases, we find that the weight of the evidence readily supported this jury's verdict, and that, although generous, the amount awarded was not excessive for this plaintiff.

Defendant alleges that plaintiff failed to adduce sufficient evidence establishing defendant's liability for plaintiff's injury, and that the court "filled in the gap" by erroneously charging to the jury a theory of proximate cause which compelled the jury to find defendant liable.

We find defendant's position to be without merit, both on the record and as a

matter of law. Three theories of liability were presented to the jury by the court: Negligence (Jones Act), Warranty of Seaworthiness, and Res Ipsa Loquitur.

The testimony at trial, by plaintiff himself and by supporting and opposing medical witnesses, presented substantial and convincing evidence that plaintiff had indeed suffered the accident he claims on May 5, 1975,[1] that the accident was caused by defendant's negligence and/or breach of the warranty of seaworthiness, and that plaintiff's resulting disability to his right hand ultimately prevented him from continuing as a marine engineer.

■ Further, we maintain that the court's charge to the jury concerning the applicable standard of liability for the aggravation or acceleration of a pre-existing physical condition was correct, for it included the legal proposition that defendant would be liable for all injuries caused in part by its negligence or breach of the warranty of seaworthiness; that defendant would be liable for all damages resulting from its aggravation or acceleration of the plaintiff's pre-existing physical condition provided it was caused, in whole or in part, by defendant's breach of duty to plaintiff.

### Liability

Given the testimony of the plaintiff, the evidence that one of his doctors requested thumb x-rays on June 6, 1975, and the testimony of Drs. Golub and Bouton, plaintiff's medical witnesses, that Milos' condition would be hard to explain in the absence of trauma, there was more than sufficient evidence for the jury to conclude, as it did, that Milos injured his thumb on May 5, 1975. Both doctors testified in great detail that even though plaintiff had pre-existing arthritis, if he had not incurred trauma he would not have been exposed to surgery and he would not have been unable to work.

If the onset of intense pain and extreme difficulty in the use of his right hand and thumb started in May, 1975 shortly following the shipboard accident, a case of causal relationship and shipowner liability was made out. The credibility of the pain and difficulty of use, following the injury in May, 1975 to plaintiff's right hand, turned on the jury's evaluation of the credibility of Mr. Milos, and its evaluation of the appropriate inferences to be drawn from other testimony and medical records.

The following comment by the Supreme Court in *Sentilles v. Inter-Caribbean Shipping Corp.,* 361 U.S. 107, 109–110, 80 S.Ct. 173, 4 L.Ed.2d 142 (1959) is enlightening (in *Sentilles,* the court was faced with a plaintiff-seaman who alleged that an accident on board defendant's vessel aggravated a latent condition of tuberculosis causing him to become seriously ill):

> The jury's power to draw the inference that the aggravation of petitioner's tubercular condition . . . was in fact caused by that accident, was not impaired by the failure of any medical witness to testify that it was *in fact* the cause. Neither can it be impaired . . . by the fact that other potential causes of the aggravation existed . . . . The members of the jury . . . were sworn to make a legal determination of the question of causation. . . . *The focal point of judicial review is the reasonableness of the particular inference or conclusion drawn by the jury.* . . .
>
> *Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable.* (emphasis added)

We believe the court's charge on the applicable standard of liability was correct. "A tortfeasor is liable for all resulting damages, though aggravated by the diseased condition of the injured party." *The Jefferson Myers,* 45 F.2d 162 (2d Cir. 1930).

---

1. Plaintiff alleged at trial that while working on board defendant's vessel, he stepped on a slippery food substance defendant had negligently failed to remove, and fell, injuring the right side of his body; the injury so aggravated a pre-existing arthritic condition from which plaintiff was suffering, that it caused him great physical discomfort, led to his ultimate disability and made him unable to continue his work as a chief marine engineer.

The law is clear that when a defendant's wrongful act or omission aggravates or accelerates a plaintiff's pre-existing condition and disables a plaintiff, thus rendering him unable to continue his work, or said aggravation awakens a dormant condition that causes a plaintiff to experience pain although he had suffered no pain from the condition prior to the aggravation, such defendant is liable in full for the disability and/or pain it caused. Here, the same standard is employed as in every other seaman's injury case: a defendant is liable if, and only if, its breach of duty "played any part, even the slightest" *in producing the injury for which damages are sought.*

Defendant appears to believe that because plaintiff would not have been disabled by defendant's acts absent his pre-existing condition, defendant is not fully liable for plaintiff's disability; or that in order to recover, plaintiff must show that defendant's acts were the sole cause of the acceleration of plaintiff's disability. These theories of liability are clearly at odds with the applicable law. *Farnarjian v. American Export Isbrandtsen Lines, Inc.,* 474 F.2d 361 (2d Cir. 1973); *Davis v. Hill Engineering, Inc.,* 549 F.2d 314 (5th Cir. 1977); *Buchalski v. Universal Marine Corp.,* 393 F.Supp. 246 (W.D.Wash.1975); *Spinks v. Chevron Oil Co.,* 507 F.2d 216 (5th Cir. 1975).

In fact, there was ample testimony in the record to show that Milos began to suffer debilitating pain in his right hand and thumb, resulting finally in the surgery and rendering him unable to grasp or grip with that hand, *only after* the fall in which he injured himself on board defendant's vessel in May, 1975.

In sum, under the law, defendant is liable for all damages resulting from the aggravation or acceleration of plaintiff's pre-existing condition because the negligence or breach of duty played some part, even the slightest, in producing the injury which caused the plaintiff to become disabled. The jury in this case clearly believed that Milos' fall, caused in part by defendant's negligence, produced plaintiff's pain and accelerated his arthritic condition sufficiently to produce his present disability.

*Proximate cause*

Plaintiff at trial presented substantial proof establishing that, absent defendant's breach of duty, plaintiff would not have become disabled prior to the age of mandatory retirement. This should satisfy the issue of "medical causation" which defendant claims the court ignored.

Additionally, we disagree entirely that there is more than one standard of causation in seamen's personal injury actions, whether based on negligence or unseaworthiness. The standard is whether defendant's negligence or breach of duty caused plaintiff's injury "in whole or in part." That standard has been described as "featherweight" in both Jones Act negligence and unseaworthiness causes of action. *Davis v. Hill Engineering, Inc., supra,* at 331.

With the consent of both parties, we charged *res ipsa loquitur* as an alternative theory of recovery, and turned over to the jury the question of "control" by the defendant of the area in question.

In their contentions over the court's charges on liability and proximate cause, the parties focus on the court's use of plaintiff's requests to charge Nos. 27 and 28. Defendant claims that by charging plaintiff's request No. 27, the court instructed the jury that plaintiff was not bound to prove that the shipboard injury was the sole cause of aggravating or accelerating his pre-existing condition; that it could combine with other causes and merely "contribute to" an aggravation. By charging request No. 28, it is alleged, the jury was told that if the vessel was unseaworthy or the officers or the crew negligent, the occurrence of *any* injury resulting therefrom, which was an aggravating or accelerating factor no matter how slight, was a basis for an award of *any* damages which may have been contributed to in any part.

The response, of course, is that the court did not charge that defendant is liable for

damages not caused in part or whole by its acts or omissions. Plaintiff's requests to charge 27 and 28, and so charged by this court, clearly instruct the jury that defendant is liable only for such damages as it actually caused. The requests to charge do not instruct the jury as to the amount of defendant's liability, nor does any other part of the charge. Since defendant concedes, as it must, that it is liable if an advancement of plaintiff's disability resulted from defendant's breach of duty to plaintiff, and since this is precisely the rule stated in plaintiff's request to charge 27, defendant has failed to raise a legal question as to the propriety of request to charge 27.

Additionally, contrary to defendant's assertions, request to charge No. 28 does not instruct the jury to hold the defendant liable for damages not resulting from its breach of duty to the plaintiff. In point of fact, the charge states that if the defendant's acts merely advanced a disability that would have occurred in any event, the defendant is to be held liable in damages only for such advancement of the disability caused by it.

### Damages

On the issue of damages, we charged the jury that they were to decide damages only after having established that the plaintiff's evidence, in terms of quality and credibility, was sufficient to support the liability of the defendant and an award of compensation to the plaintiff (Transcript, p. 1428). Loss of wages, pain and suffering, and the degree of permanency of the injuries were presented to the jury as a possible basis for damages, and they were urged to make up their own minds as to the extent, if any.

The fact that Milos drew on his accrued vacation pay during various periods after the accident and prior to trial, does not mean he had no wage loss. Milos did not work May–August, 1975 because of his injury. Since he was earning $3,000 a month even as a second assistant engineer, rather than his accustomed position as chief engineer, plus approximately $600 per month in vacation pay benefits for each month worked, this loss of earnings alone was between ten (10) and fifteen (15) thousand dollars. The earnings he lost from July, 1977 to December, 1977 was certainly a loss causally connected to the shipboard accident. There is absolutely no merit to defendant's contention that because Milos applied for and used his earned vacation pay to sustain him during this period of disability, he thereby forfeited his right to recover from the shipowner for the forced loss of earnings imposed upon him by his pain and disability.

An important factor, as presented by plaintiff's evidence, was the severe limitation of plaintiff's ability to perform his work, caused by his particular disability. There was testimony from plaintiff's medical witnesses that Milos' grasp and grip were almost completely lost because of the shipboard accident on May 5, 1975. Both doctors unequivocally stated that Milos could not and should not return to work as a marine engineer.

A key fact that defendant fails to confront is that Milos would be earning in the area of $60,000 per year if defendant had not caused the injury which ultimately disabled him. Milos lost the effective use of his right hand; the evidence showed he had a fourteen year expected work-life. The jury was entitled to award damages for fourteen years wage loss at $60,000 per year, resulting in an amount (for that item alone) well in excess of the verdict. The evidence convincingly pointed up that the accident blasted his future career, as a chief engineer on first-class vessels.

In sum, defendant contends in his motion that the verdict was excessive, and unsupported, in light of conflicting evidence as to whether plaintiff's present incapacity relates as much to the injury caused by defendant's negligence as it does to plaintiff's pre-existing arthritic condition. Defendant disputes the jury's evaluation of the extent of plaintiff's incapacity as being contrary to the weight of the evidence.

In fact, it appears to us that the jury, being entrusted with the obligation and

duty to decide the issues of fact posed in this case, carried out its duty admirably and effectively. The total trial record demonstrates sufficient evidentiary support of the verdict.

Counsel for the defendant, in his post-trial memorandum, continually invades the exclusive province of the jury, the sole fact-finders in this case. He takes unto himself its function, giving certain facts *his* weight, *his* estimate, and brushes aside other facts as though they did not exist.

### Grunenthal

On this issue of the scope and weight of the jury's findings, and the standard of review to be applied by the court to the jury's findings, we regard as particularly pertinent a case that came before us in 1967, *Grunenthal v. Long Island Railroad Co.,* 292 F.Supp. 813 (S.D.N.Y.1967), aff'd in part, rev'd and remanded on issue of excessiveness of verdict, 388 F.2d 480 (2d Cir.), rev'd and remanded 393 U.S. 156, 89 S.Ct. 331, 21 L.Ed.2d 309 (1968). In this FELA action (we note here that the FELA is specifically incorporated into the Jones Act, making its provisions applicable to seaman's personal injury actions), plaintiff, a railroad track worker, sued for damages when his foot was crushed by a railroad tie falling on it. Plaintiff had worked for the railroad his entire adult life; he was 45 years old at the time of the trial, with a life expectancy of 27 years. Plaintiff had been earning approximately $6,000 per year at the time of his injury (he was an acting foreman) and the evidence showed he could have expected substantial increases in salary over the remainder of his working life.

The jury was instructed to consider recovery for past and future wages lost, as well as damages for pain and suffering. The verdict was for $305,000.00. The evidence showed that $27,000 was the amount of past wages lost, and that $100,000–$150,000 approximated future lost earnings; with another $100,000–$150,000 estimated for pain and suffering.

The trial court's decision not to declare a mis-trial due to excessiveness of the verdict was reversed by the Court of Appeals for the Second Circuit, but upheld by the Supreme Court which independently reviewed the evidence and upheld the trial court.

In *Grunenthal,* we made the following comments (in the main, applicable here) on defendant's motion for a new trial:

We were impressed with the attentiveness of the jury throughout the course of the trial, its outward show of exemplary deportment, the considerable time it devoted to deliberating on both the liability and damage phases of the trial, and so expressed ourselves in open Court before excusing the jury.

Clearly we have no way of knowing the jury's actual evaluation of the various items making up total damages. We can and must indulge, however, in a fairly accurate estimate of factors to which the jury gave attention, and favorable response, in order to arrive at the verdict announced.

We can appreciate the heavy weight, given the total trial record by the jury in plaintiff's favor. Among other impressive phases of the trial were, (a) the candor evinced throughout by plaintiff, the total absence of exaggeration in his testimony especially when describing the excruciating physical pain and mental anguish he endured since the accident . . . (b) the unrebutted testimony of plaintiff's medical expert . . . (c) tantamount to no contest as to each item of damages was the total trial record adduced by plaintiff. . . .

The jury, impressed by the uncontroverted proof adduced by plaintiff, may well have adopted in toto its full significance and drawn such normal and natural inferences therefrom as the law endorses.

The court continued, evaluating the evidence presented to the jury, in the following vein:

On the record here, [the jury] had good and sufficient reason to regard and assess plaintiff's pain and suffering as excruciating, deep-seated, unrelenting and debilitating—the inducing cause of his constant misery. Reasonable and controlled

reaction to pain and suffering varies with man's innate, sensitive response to the woes and laments of those stricken and bereaved—especially where clearly unearned or cruelly inflicted. Who is to say this jury was not so composed? If the jury believed such an award fair and proper, we find nothing untoward, inordinate, unreasonable or outrageous—nothing indicative of a runaway jury or one that lost its head—in its reflected resolution to so respond.

Concededly, at first blush the verdict appears excessive. However, a detailed analysis of the proof covering the items making up total damages in the light of this particular trial record, with resounding emphasis in plaintiff's favor all down the line, points to a jury that was generous—not generous to a fault or outside the bounds of legal appropriateness.

We are told, and properly so, that the jury's discretion in the assessment of damages in a case predicated on subject matter such as we deal with here is wide—not wild. Theirs is the responsibility. A judge must not interfere with the jury's verdict unless he conscientiously believes it excessive. *Dagnello v. Long Island R. R. Co., supra* [D.C., 193 F.Supp. 552]; *Dellaripa v. New York, New Haven & Hartford R. Co.,* 257 F.2d 733, 735 (2d Cir. 1958). Applying that criterion, we cannot in all good conscience say so.

On appeal to the Second Circuit Court of Appeals, the court reversed denial of the motion, and remanded, requiring a remission of part of the jury verdict, 388 F.2d 480 (Hays, J. dissenting). The court found no error in the conduct of the trial, but held the verdict to be "grossly excessive," and set it aside under the apparent authority of *Dagnello v. L.I.R.R.,* 289 F.2d 797 (2d Cir. 1961). Commenting on the trial court's decision, the majority stated: "In his enthusiasm for what he described to the jury after the verdict as their fine 'spirit' and 'dedication' and 'with resounding emphasis in plaintiff's favor all down the line' the trial judge, we think, supplied any 'absence of exaggeration' in plaintiff's testimony by doing a little exaggerating himself . . .." (at 484).

However, Judge Hays, in dissent, cited the following comments on behalf of the trial court's decision:

The trial judge, who was surely in a better position to weigh the evidence than we are, referred to "the total absence of exaggeration" in plaintiff's testimony . . . . We are not justified in substituting our opinion for the verdict of the jury except in the most extreme case. [Citing *Neese v. Southern Ry. Co.,* 350 U.S. 77, 76 S.Ct. 131, 100 L.Ed. 60 (1955)]: "If the action of the trial court . . . [is] not without support in the record . . . its action should not . . . [be] disturbed by the Court of Appeals."

It is to be hoped that the disregard by the majority in this case for the integrity of the jury's verdict will not be taken by the district courts to justify a widespread increase in the use of remittitur. (at 485–486)

The Supreme Court granted certiorari, and issued an opinion in support of the actions of the trial judge, while disagreeing with the standard of review invoked by the Court of Appeals:

[A]ssuming, without deciding, that the Court of Appeals was empowered to review the denial and invoked the correct standard of review, the action of the trial judge, as we view the evidence, should not have been disturbed. . . .

The Court of Appeals regarded its inquiry as limited to determining whether the trial judge abused his discretion in denying the railroad's motion. Its guide for that determination, the court stated, was the standard of review announced in its earlier decision in *Dagnello v. Long Island Railroad Co.* (citation omitted)

. . . . . .

We read *Dagnello,* however, as requiring the Court of Appeals in applying this standard to make a detailed appraisal of the evidence bearing on damages.

The Court went on to cite from the record the evidence in support of the trial judge's decision that the jury verdict was reasonable and not excessive; in effect, making independent findings of fact, and

noting approvingly the comments of the trial judge on the credibility of the witnesses, particularly the plaintiff, as supporting on the record the jury's findings of fact.

Application of these same principles, enunciated in support of our decision in *Grunenthal,* to the Milos matter, we believe, presents similar grounds for denying the instant motion for a new trial.

Points we emphasize here are Milos' own credibility and restrained evaluation of his disability; the medical evidence supporting the jury's evaluation of his incapacity to perform his job in the future; the testimony as to his wages lost—past and future, all of which would tend to support, on the record as a whole, the verdict awarded by the jury.

### Albanese

Another case in which we were involved, strikes us as relevant and informative: *Albanese v. N.V. Nederl. Amerik Stoomv. Maats. v. International Terminal Operating Co.,* 346 F.2d 481 (2d Cir. 1965) (revised opinion), rev'd and District Court judgment reinstated 382 U.S. 283, 86 S.Ct. 429, 15 L.Ed.2d 327, on issue of correctness of charge to jury on negligence. *Albanese* involved an action by a longshoreman against a shipowner for injuries suffered from fumes of monoxide gas breathed by the plaintiff in the ship's hold; the shipowner seeking indemnity, filed a third-party complaint against the stevedore (ITO). Plaintiff alleged that the shipowner had been informed by the stevedore, through one of its officers, of the fumes in the hold, but had failed to carry out its promise to promptly turn on the ship's ventilation system; the plaintiff's injuries resulted. The shipowner as third-party plaintiff claimed that the stevedore was liable for having breached its duty to provide reasonably safe working conditions, charging that the stevedore could have called its men off the job and had blowers on the pier which it could have brought in when the ship failed to turn on its own ventilation system.

The District Court (Cooper, J.) entered judgment upon a jury's verdict, awarding plaintiff $145,000 damages, and ruled in favor of the stevedore on the third-party complaint. No written opinion was filed. The Court of Appeals for the Second Circuit set aside the judgment and remanded on both actions, finding that the shipowner had not been negligent for failing to turn on the ventilating equipment, having had no actual notice of the problem; and finding that the stevedore was not absolved from responsibility for the injuries by having informed the ship's officer of the dangerous condition, if it had in fact done so.

The Court of Appeals held there had been error in the District Court's charge, wherein it had charged constructive notice as a basis for the shipowner's liability, as well as actual notice, in presenting the issue of negligence to the jury.

All parties appealed to the Supreme Court, and the court granted certiorari to *Albanese,* while denying it on the third-party action. The Court, sitting *per curiam,* held:

> We believe that the judgment of the Court of Appeals setting aside the judgment for petitioner Albanese on the ground that the trial court incorrectly charged the jury on the issue of negligence is erroneous.

> [W]e not only reverse the judgment of the Court of Appeals . . . but reinstate the District Court's judgment in his favor.

Upon remand of the third-party action between the shipowner and the stevedore, the District Court (Levet, J.) conducted a second jury trial, in which the jury found for the third-party defendant, the stevedore, on the issue of its liability for indemnity to the shipowner for the recovery by Albanese. At the retrial, the court had given Special Interrogatories to the jury on the issue of notice of the dangerous condition to the shipowner. The jury found that such notice was given, and returned a general verdict in favor of the stevedore.

The court denied the shipowner's motions for judgment notwithstanding the verdict and for a new trial, pointing out that: "[T]he jury verdict on this retrial was in accord with previous determinations." 279 F.Supp. 635, 637 (S.D.N.Y.1967). The court

held: "The general rule . . . is that whether a stevedore has breached its warranty of workmanlike performance and whether the shipowner's conduct precludes indemnity are *primarily factual, not legal, questions.*" *Id.,* at 640 (emphasis added). In denying the motion for a new trial, the court stated: "The shipping company appears to . . . disregard the clear conclusion of the jury at retrial that [the stevedore] reasonably relied on the ship to operate the blowers to clear the hold."

The shipowner again appealed the dismissal of its claim for indemnity to the Court of Appeals for the Second Circuit. In an opinion at 392 F.2d 763 (2d Cir. 1968), the Court of Appeals reversed denial of judgment notwithstanding the verdict, and required entry of judgment for the shipowner for full indemnity. The majority stated as its position that it felt there was *no question of fact to be presented to the jury* on the two issues of whether the stevedore had breached its warranty, and whether the shipowner was nonetheless liable, having received notice of the dangerous condition.

In light of the history of this action, and faced with two jury verdicts in direct opposition to the findings of the Court of Appeals majority, dissenting Judge Moore presented the following argument in support of the jury's verdict:

[The shipowner] had to prove on the retrial of the indemnity claim that its liability was proximately caused by a breach of warranty of workmanlike service on the part of [the stevedore]. From the evidence on the retrial, the jury could have found that [the stevedore] did not breach its warranty or act unreasonably.

. . .

[S]ince the jury has decided that it was reasonable for [the stevedore] to rely momentarily on [the ship's ventilating system] being turned on, any failure on the part of [the stevedore] to use its . . . portable blowers is irrelevant. This is not to say that a jury verdict for [the stevedore] was required by the evidence, but only that the jury's decision should not be disturbed. The entry of judgment notwithstanding the verdict (and the

overruling of this court's prior determination that there was a triable issue on essentially the same facts as are before us now) is in my opinion an *unjustified usurpation of the function of the jury.* at 766 (emphasis added).

That is exactly our position here: we must take great care to avoid an "unjustified usurpation of the function of the jury," especially where clear issues of fact appear in the trial record and ample evidence exists to support the verdict.

We are overwhelmingly convinced that the record here is replete, practically saturated, with factual questions, the resolution of which support the findings of the jury (which is not to say no other result was conceivable).

In the last analysis, we see overwhelming support for the observation (in essence) of Mr. Justice Holmes: that the life of the law has not been logic; it has been experience. It is exactly that "experience" which brought the jury system into its very existence; and it was the jury's "experience" which resulted in the verdict herein recorded and now under attack.

### Conclusion

The applicable law strongly supports plaintiff's contentions that under the Jones Act and general maritime law, the defendant is liable in damages for injuries to which defendant's negligence or the vessel's unseaworthiness contributed in "even the slightest degree."

Additionally, as to medical causation, only a slight suggestion of causation between injury and disease need be shown; and the fact that the injury might reasonably be attributable to factors other than the defendant's negligence is not a bar to a verdict for the plaintiff.

The defendant here is entrapped in semantic distinctions which find no support in the law. His claim that the court should have charged different standards of proximate cause for medical causation, negligence, and seaworthiness is simply wrong as a matter of law.

The questions of law raised by defendant's motion papers have been discussed

extensively, *supra.* As to the improper admission or rejection of testimony at trial, those points were discussed at the time, and do not serve as a basis for mistrial; nor was there any misconduct by counsel or the court worthy of the name. The only question of any validity is whether the verdict was so excessive as to be against the weight of the evidence, or shocking to the conscience of the court, or clearly revealing errors of law and we feel that on the record as a whole, no such error appears.

Accordingly, defendant's motion is denied in all respects, and the jury's verdict remains undisturbed. There being no just reason for delay, let judgment be entered. (Maintenance and cure having been reserved to the court by agreement of the parties, it will be the subject of a separate judgment).

SO ORDERED.