**Charles G. GORMAN, Plaintiff,**

v.

**PRUDENTIAL LINES, INC., Defendant.**

**No. 85 Civ. 830 (WCC).**

United States District Court,
S.D. New York.

June 16, 1986.

880

A. Marc Pellegrino, Albany, N.Y., for plaintiff.

William J. Blumenschein, New York City, for defendant.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge.

This case is a paradigm of the explosion of tort litigation that has caused a crisis in the liability insurance business—a prototypical exemplar of the virtually universal effort to obtain compensation for every injury or loss regardless of actual fault.

Plaintiff Charles G. Gorman ("Gorman"), a Chief Engineer on the tanker SAROULA owned by defendant Prudential Lines, Inc. ("Prudential"), has sued under the Jones Act, 46 U.S.C. § 688 *et seq.* and general maritime law, claiming that he suffered coronary artery disease as a consequence of Prudential's negligence in failing to provide him a safe place to work and the resulting unseaworthiness of the ship.

Following a jury award in Gorman's favor, Prudential has moved for judgment in its favor notwithstanding the verdict. For the reasons stated below, the motion must be denied.

*Factual Background*

Gorman, a 60–plus-year-old engineering officer, signed on the SAROULA as Acting Chief Engineer in August 1980, his first voyage at that rank. The SAROULA, built in 1958, was a deep draft vessel 670 feet in overall length with a 90–foot beam. It was under charter to deliver oil to various ports along the Gulf Coast and East Coast of the United States and throughout the Caribbean.

Under the contract between Prudential and Gorman's union, Marine Engineers Benevolent Association, Gorman was entitled to one day of paid vacation for each day of work. Accordingly, after a first voyage of several months, he was ashore on leave for several months before signing on again, this time as Chief Engineer. Gorman repeated this cycle of work and leave for a total of four voyages on the SAROULA until February 1982 when he suffered an acute attack of angina pectoris.

The condition of the machinery and equipment on the SAROULA clearly left much to be desired. There were frequent breakdowns and malfunctions of the engine room equipment which Gorman had the responsibility to keep in operating condition, and there were insufficient spare parts and materials on board to effect the necessary repairs. As a result, Gorman was required to work many hours of overtime, some days putting in a total of up to 18 hours. Pursuant to an unusual agreement with Prudential, Gorman was paid for all such overtime work and thus was able almost to double his base pay of $50,000 a year.

Because he wanted this substantially increased income and liked the SAROULA's usual itinerary, with frequent calls at domestic ports, Gorman volunteered for repeat voyages on the vessel, knowing better than anyone the condition of her mechani-

cal equipment. Gorman apparently did not suspect that he was suffering from coronary artery disease and had no symptoms thereof until a few days before the end of the fourth voyage, when he experienced upper abdominal pains. Believing that he was suffering only from indigestion, he took Digel. When the pain persisted, he reported to the Captain and was given paregoric. After a day or so of rest, his condition had improved to such extent that he volunteered to stand a wheel watch.

Three days before the end of the voyage, he suffered more intense pains and, when the vessel docked at Baton Rouge, Louisiana, he was taken to Lady of the Lakes Medical Center. There an angiogram revealed that one of his three major coronary arteries was 99% blocked, another was 90% blocked, and the third was 60% blocked. A triple coronary bypass operation was performed to replace the blocked arterial segments. The operation was apparently a complete success. After a period of approximately 5 months of recuperation and rest, Gorman requested a qualifying physical examination in which he was found fit for duty. He returned to work as a First Assistant Engineer in December 1982.

*The Trial*

At the trial, in addition to adducing considerable evidence as to the mechanical difficulties which he confronted in attempting to keep the SAROULA in operation, Gorman called as an expert witness a specialist in internal medicine. The doctor testified that, although Gorman had a long-term buildup of fatty cholesterol deposits or plaque in his coronary arteries, the immediate producing cause of his acute attack of angina pectoris was a short-term accumulation of thrombi or platelets on top of the plaque, which resulted from the extreme stress to which Gorman was subjected by the deplorable condition of the engine room equipment and the long hours he was thereby required to work.

Prudential, in addition to introducing evidence that the SAROULA had consistently passed inspections by the United States Coast Guard and the American Bureau of Shipping and was rated "in class," called as an expert witness a board-certified and experienced cardiologist. He flatly contradicted the opinion of Gorman's expert, testifying that coronary artery disease of the type and degree suffered by Gorman was the product of many years of gradual accumulation of plaque, a function of diet and heredity, and that working conditions, no matter how stressful, would not produce a significant rapid increase in the accumulation or trigger an acute angina attack.

The jury resolved this conflict in favor of Gorman. In its verdict, returned in the form of answers to special interrogatories, it found that the SAROULA was not unseaworthy, but that Prudential had been negligent in failing to provide a safe workplace; that such negligence was a proximate cause of Gorman's injury; that Gorman had been damaged to the extent of $125,000; that Gorman himself had negligently contributed to his own injury; and that 75% of Gorman's injury was attributable to his own negligence. Thus, on principles of comparative negligence, Gorman is entitled to a judgment against Prudential in the net amount of $31,250 plus costs.

Prudential's motion for judgment in its favor, notwithstanding the verdict, is based on the contentions that (1) Prudential had no obligation to provide a ship on which repairs were not required or on which spare parts were immediately available; Gorman performed only the normal work of a Chief Engineer in keeping the engine room equipment in working condition; and (2) Gorman's coronary artery disease was not proximately caused by the condition of the vessel because it was not reasonably foreseeable by Prudential, since even Gorman himself didn't even know that there was a buildup of plaque in his coronary arteries that predisposed him to an acute attack.

*Discussion*

On a motion under Rule 50(b), Fed. R. Civ. P., for judgment notwithstanding the verdict,

"[c]ourts are not free to reweigh the evidence and set aside the jury verdict

882

merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable."

*Sentilles v. Inter-Caribbean Shipping Corp.*, 361 U.S. 107, 110, 80 S.Ct. 173, 176, 4 L.Ed.2d 142 (1959) (quoting *Tennant v. Peoria & Pekin Union Ry. Co.*, 321 U.S. 29, 35, 64 S.Ct. 409, 412, 88 L.Ed. 520 (1944)). A jury verdict may be set aside only where the court concludes that, even construing the evidence most favorably to the non-moving party, no reasonable jury could have reached such a conclusion. *Mallis v. Bankers Trust Co.*, 717 F.2d 683, 688 (2d Cir.1983).

■ In this case, there was expert testimony that Gorman's attack of acute angina was a proximate result of the extreme stress to which he was subjected by the deplorable condition of the engine room equipment which he was responsible to maintain in operating condition. The jury chose to believe this testimony in preference to the countervailing opinion of Prudential's expert that the attack was the inevitable result of the gradual accumulation of plaque in Gorman's coronary arteries which had been proceeding for decades. That this Court finds the latter opinion much more persuasive is not enough.

■ Nor is Gorman's claim defeated by the fact that his coronary artery disease was inexorably progressing to an eventual complete arterial blockage with resulting myocardial infarction or "heart attack" involving irreversible damage to his heart muscle. Under the well-established "thin-skulled plaintiff" rule, a tort-feasor must take the victim "as it finds him," and is responsible for any aggravation or acceleration of an existing disease or infirmity if the defendant's breach of duty "played any part, even the slightest" in producing the injury. *Milos v. Sea-Land Service, Inc.*, 478 F.Supp. 1019, 1023 (S.D.N.Y.1979), *aff'd mem.*, 622 F.2d 574 (2d Cir.), *cert. denied*, 449 U.S. 954, 101 S.Ct. 360, 66 L.Ed.2d 219 (1980); *Curry v. U.S.*, 327 F.Supp. 155, 164 (N.D.Cal.1971).

From the evidence, this Court is firmly convinced that Gorman was "a heart attack waiting to happen," and that the stressful working conditions on the SAROULA at most merely accelerated, perhaps by only a few months, the eventual onset of the painful symptoms of angina. Indeed, Gorman's experience on the SAROULA may even have been a blessing in disguise, because it gave him a forewarning of future tragedy which permitted and prompted him to obtain surgical relief and forestall the eventual heart attack for which he was surely headed. Moreover, the auspicious timing of Gorman's angina attack afforded him at least a colorable basis for causally linking the attack to his employment and thereby dipping into Prudential's "deep pocket" for at least a partial economic balm for his long-ailing heart.

Under the legal principles alluded to above, which paternalistically protect injured plaintiffs, and especially seamen, the Court has no alternative but to deny the motion for judgment N.O.V.

SO ORDERED.