**William W. EVANS, Plaintiff,**

v.

**UNITED ARAB SHIPPING COMPANY (S.A.G.) and M/V AL WATTYAH, her engines, boilers, equipment, etc., Defendants.**

**Civ. No. 89–5246 (SSB).**

District Court of United States, D. New Jersey.

May 1, 1992.

Edward V. Cattell, Jr., Jeffrey S. Moller, Clark, Ladner, Fortenbaugh & Young, Cherry Hill, N.J., for plaintiff.

Cary R. Wiener, William E. Bell, Saburabi N. Ibrahim, Kirlin, Campbell & Keating, Caldwell, N.J., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

BROTMAN, District Judge.

A bench trial in this Jones Act case was held on March 4–7, 1991. On July 30, 1991, this court ruled that defendant United Arab Shipping Company was negligent in failing to ensure that the accommodation ladder attached to the M/V Al Wattyah was reasonably safe for plaintiff pilot William W. Evans' egress from the ship on September 10, 1989. *Evans v. United Arab Shipping Co.*, 767 F.Supp. 1284, 1292 (D.N.J.1991). The court also held that defendant's negligence caused the plaintiff to fall and hit the launch. *Id.* The court ordered plaintiff to provide a detailed estimate of his damages due to the aggrava-

tion of his pre-existing and almost completely latent motor neuron disease by segregating damages due to plaintiff's preexisting illness, the defendant's negligence and any traumas suffered by plaintiff after the accident.[1] The court also required plaintiff to provide a detailed estimate of his damages for the orthopedic injuries that he sustained as a result of the September 10, 1989 incident. *See* November 22, 1991 Order.

A hearing on the issue of damages was held on February 6, 1992. After considering the evidence presented and the arguments and submissions of counsel, the court makes the following findings of fact and conclusions of law.

## I. FINDINGS OF FACT [2]

1. A few days after the incident aboard the M/V Al Wattyah, Dr. Bell, plaintiff's family physician, examined plaintiff's complaints of pain in his nose, ribs and coccyx. X-rays revealed that plaintiff had suffered a fractured nose but there is no corroborating evidence that he suffered any injury to his ribs or coccyx.

2. Plaintiff's medical expenses for his fractured nose and complaints due to the September 10, 1989 incident amount to $875.00. These expenses are for medical services performed on September 21, 1989 and September 22, 1989 at Riddle Memorial Hospital including an electromyogram, a CAT scan and a reflex test.

3. Plaintiff's injury caused him to miss 38 days of work after the incident.

4. After returning to piloting on October 26, 1989, plaintiff took a medical leave of absence beginning November 10, 1989. He has not piloted a boat since November 10, 1989.

5. Dr. Cook, plaintiff's medical expert in neurology and treating neurologist, noted on January 16, 1990 that before the September 10, 1989 incident, plaintiff said his legs were tired and his balance was off.

Dr. Bhatt, plaintiff's other treating neurologist, testified that at plaintiff's examination on October 4, 1989, he had complained of difficulty with walking and balance "for the last few months."

6. Since the September 10, 1989 incident, plaintiff has fallen several times fracturing his left arm in February, 1990 and fracturing his hip in May, 1990. In June, 1990 plaintiff was unable to pass the physical exam he needed to renew his state pilot's license, which expired on September 1, 1990. When Dr. Cook saw the plaintiff in September, 1990, he was struck by his increased facial weakness, spasticity, ataxia and generalized weakness.

7. No doctor has been able to provide a definitive diagnosis of plaintiff's neurological condition. Dr. Cook described it as an unusual genus of motor neuron disease that resembles amyotrophic lateral sclerosis (ALS), also known as Lou Gehrig's disease. ALS is a chronic progressive disease of the nervous system affecting the nerve cells of the spinal cord and the brain stem. Defendant's medical expert, Dr. Duvosin, stated that plaintiff did not suffer from ALS but from olivopontocerebellar atrophy (OPCA). OPCA is a chronic progressive degeneration of the nervous system affecting the cerebellum and the base of the ganglia, and sometimes affecting the cerebral cortex and the nerves of the spinal cord and brain stem.

8. The last full year of plaintiff's employment was 1988 in which earnings, net of expenses, from his share as a first class pilot member of the Pilot's Association was $144,780.00. Plaintiff's lost earnings from September 11, 1989 until October 26, 1989 amount to $15,155.00.

## II. CONCLUSIONS OF LAW

A seaman injured by the tortious conduct of his employer is entitled to an award of damages commensurate with the nature and extent of his injuries. *Pfeifer v. Jones & Laughlin Steel Corp.*, 678 F.2d 453, 460

---

**1.** On July 30, 1991, this court determined that defendant's negligence did not cause plaintiff's motor neuron disease but played a part in aggravating it. *Id.* at 1293.

**2.** For clarification of the issues presented, the court will restate some of its relevant findings of fact of July 30, 1991.

(3d Cir.1982). The plaintiff is entitled to damages for:

1) loss of earnings and any impairment of his earning capacity, past and future, based on life expectancy at the time of the injury and based upon the probable pecuniary loss reduced to its present net worth;

2) medical expenses, past and future;

3) redress for his physical injury including pain, suffering, mental anguish, discomfort and inconvenience and compensation for the physical and mental effects of the injury on his ability to engage in those activities which normally contribute to the enjoyment of life based on life expectancy at the time of the injury.

*Id.; see Bates v. Merritt Seafood, Inc.*, 663 F.Supp. 915, 935 (D.S.C.1987). Moreover, the plaintiff should be awarded prejudgment interest unless there are exceptional circumstances that would make such an award inequitable. *Cooper v. Loper*, 923 F.2d 1045, 1051 (3d Cir.1991); *East Coast Tender Service, Inc. v. Winzinger*, 759 F.2d 280, 284 (3d Cir.1985); *Matter of Bankers Trust Co.*, 658 F.2d 103, 108 (3d Cir.1981).

█ In cases like this one, in which an employer's negligence aggravated a preexisting condition, courts have held that the defendant must compensate plaintiff only for the aggravation itself and not for the preexisting condition. "The court has only allowed damages for the increased and augmented suffering and disability which was the proximate result of defendant's act." *Kruhlinski v. New York, New Haven & Hartford Railroad Co.*, 217 F.Supp. 723, 726 (S.D.N.Y.1963); *see Johnson v. Offshore Express, Inc.*, 845 F.2d 1347, 1357 (5th Cir.1988); *Howell v. Gould, Inc.*, 800 F.2d 482, 488 (5th Cir.1986); *Duty v. United States Department of Interior*, 735 F.2d 1012, 1014 (6th Cir.1984); *Scarberry v. Ohio River Co.*, 217 F.Supp. 189, 193 (S.D.W.Va.1963); *Thompson v. Coastal Oil Co.*, 119 F.Supp. 838, 845 (D.N.J.1954)

(symptoms of brain damage considered only to the extent that unseaworthy condition aggravated them); Benedict on Admiralty § 32 at 3–284, 3–285 (1989). *Contra Gorman v. Prudential Lines, Inc.*, 637 F.Supp. 879, 882 (S.D.N.Y.1986); *Milos v. Sea–Land Serv., Inc.*, 478 F.Supp. 1019, 1023 (S.D.N.Y.1979). Where plaintiff would have experienced the symptoms of his preexisting condition at some time in the future even if he had not fallen, he can only recover that portion of his damages caused by the aggravating event, and not all damages associated with the preexisting condition.[3] Although the Jones Act contains a liberal causation requirement, the plaintiff must still prove his claim for damages as in any other personal injury case, by the preponderance of the evidence. *See Brister v. A.W.I., Inc.*, 946 F.2d 350, 354–355 (5th Cir.1991).

Based on the evidence presented at the bench trial of March 4–7, 1991 and at the hearing of February 6, 1992, the plaintiff has not met his burden of proof. By maintaining that defendant caused rather than aggravated his motor neuron disease, plaintiff has not sufficiently segregated damages due to the preexisting disease, the defendant's negligence and the traumas that he suffered after the September 10, 1989 incident. Since he has neither demonstrated the extent of aggravation of his disease by the fall, nor that he suffered from ALS as opposed to OPCA, any award the court would make based on the aggravation would be completely speculative. Accordingly, the court will only award the plaintiff damages for his fractured nose caused by defendant's negligence. *See Bennett v. Longacre*, 774 F.2d 1024, 1028 (10th Cir.1985) (damage award was not inadequate when factfinder could have chosen to believe that alleged injuries were attributable to preexisting condition based on conflicting medical testimony).

---

**3.** The plaintiff has the burden of proof with respect to the issue of aggravation pursuant to this court's order of November 22, 1991. *Tisdale v. Fields*, 183 N.J.Super. 8, 10–11, 443 A.2d 211 (App.Div.1982). *See* February 6, 1992 Transcript at 11. The plaintiff bears the burden of proof because he is in the best position to access the extent of his preexisting condition and the aggravation of that condition by the defendant's tortious conduct.

### a) Loss of Earnings

■ The plaintiff is entitled to damages for loss of earnings and any impairment of his earning capacity, past and future, based on life expectancy at the time of the injury and based upon the probable pecuniary loss reduced to its present net worth. *Fitzgerald v. United States Lines Co.*, 374 U.S. 16, 83 S.Ct. 1646, 1649, 10 L.Ed.2d 720 (1963); *Pfeifer* at 460; *Dunn v. Penrod Drilling Co.*, 660 F.Supp. 757, 769 (S.D.Tex.1987). Plaintiff missed 38 days of work immediately after the September 10, 1989 incident from September 11, 1989 until October 26, 1989. The court awards plaintiff $15,155.00 for his lost earnings from September 10, 1989 until October 26, 1989.

### b) Medical Expenses

The plaintiff is also entitled to damages for past and future medical expenses due to the September 10, 1989 incident. *Fitzgerald*, 83 S.Ct. at 1649; *Pfeifer* at 460. The cost of plaintiff's past medical treatment for his nose injury amounts to $875.00. Since the plaintiff has not presented evidence of future medical expenses due to his injury from the September 10, 1989 incident, the court will award plaintiff $875.00 in medical expenses. *See Wardwell v. United States*, 764 F.Supp. 679 (D.Me.1991) (no recovery for expenses not attributed to the accident in question).

### c) Pain and Suffering and Loss of Life's Enjoyment

■ The plaintiff is entitled to damages for redress for his physical injury including pain, suffering, mental anguish, discomfort and inconvenience and for the physical and mental effects of the injury on his ability to engage in those activities which normally contribute to the enjoyment of life based on life expectancy at the time of the injury. *Pfeifer* at 460; *Dunn* at 769. There is no yardstick by which these non-economic damages can be precisely measured in dollars and cents. *Bates* at 936–937. Plaintiff is entitled to an award for his pain and suffering and loss of life's enjoyment for his nose injury which re-

quired him to miss 38 days of work so that it could sufficiently heal. The court awards the plaintiff $7,600.00 for these non-economic damages, $200.00 a day for each day of work missed.

### d) Prejudgment Interest

■ The plaintiff is also entitled to prejudgment interest from September 10, 1989 to the date of the filing of this opinion. *East Coast Tender Service* at 284; *Somarelf v. American Bureau of Shipping*, 720 F.Supp. 441, 454 (D.N.J.1989); *Zurich Insurance Co. v. Pateman*, 692 F.Supp. 371, 380 (D.N.J.1987). Prejudgment interest "serves to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress." *West Virginia v. United States*, 479 U.S. 305, 107 S.Ct. 702, 706 n. 2, 93 L.Ed.2d 639 (1987); *see Martin v. Cooper Electric Supply Co.*, 940 F.2d 896, 910–911 n. 13 (3d Cir.1991); *Phoenix Canada Oil Co. Limited v. Texaco, Inc.*, 842 F.2d 1466, 1480 (3d Cir.1988); *Bankers Trust* at 108. The court awards plaintiff prejudgment interest in the amount of 8.0% per annum based on the average rate of return of the State of New Jersey Cash Management Fund from 1989 until 1992. *See* Rule 4:42–11, Publisher's Note. This amount shall only be applied to the economic damages awarded for loss of earnings and medical expenses and not to the non-economic damages awarded for pain and suffering. *Poleto v. Consolidated Rail Corp.*, 826 F.2d 1270, 1277–1278 (3d Cir.1987).

### III. CONCLUSION

For the foregoing reasons, the plaintiff is awarded $15,155.00 for loss of earnings, $875.00 for medical expenses and $7,600.00 for pain and suffering and loss of life's enjoyment and prejudgment interest in the amount of 8.0% per annum from September 10, 1989 to the date of filing of this opinion applied to the damages awarded for loss of earnings and medical expenses.