**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

STEVEN V. SAUER,

       Plaintiff - Appellant,

  v.

BURLINGTON NORTHERN
RAILROAD COMPANY,
a Delaware corporation,

       Defendant - Appellee.

No. 95-1153

---

ORDER

Filed February 14, 1997

---

Before **BALDOCK, LOGAN** and **BRISCOE**, Circuit Judges.

---

Upon consideration of appellee's motion to publish order and judgment of November 5, 1996, said motion is granted.


       Entered for the Court

       PATRICK FISHER, Clerk of Court


       by:

       Audrey F. Weigel
       Deputy Clerk

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 5 1996**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

STEVEN V. SAUER,

    Plaintiff-Appellant,

      v.

BURLINGTON NORTHERN
RAILROAD COMPANY, a Delaware
corporation,

    Defendant-Appellee.

No. 95-1153

---

Appeal from United States District Court
for the District of Colorado
(D.C. No. 93-CB-854)

---

Norman R. Mueller, of Haddon, Morgan & Foreman, P.C., of Denver, Colorado (Ty Gee, of Haddon, Morgan & Foreman, P.C., of Denver, Colorado; and James L. Cox, Jr., of Morrisard, Rossi, Cox, Kiker & Inderwish, P.C., of Aurora, Colorado, with him on the brief), for the appellant.

Bennett Evan Cooper, of Steptoe & Johnson, of Washington, D.C. (Charles G. Cole, of Steptoe & Johnson, of Washington, D.C.; and Thomas L. Beam, of Knudsen, Berkheimer, Richardson & Endacott, of Denver, Colorado, with him on the brief), for the appellee.

---

Before BALDOCK, LOGAN, and BRISCOE, Circuit Judges.

---

BRISCOE, Circuit Judge.

---

Steven V. Sauer, a railroad worker employed by Burlington Northern Railroad Company (BN), appeals from the judgment entered on his personal injury claims against BN under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51-60.  He contends (1) the district court erred by refusing to instruct the jury that assumption of the risk is not a defense under FELA, (2) expert testimony apportioning his injuries between a preexisting condition and the workplace accidents was required before the preexisting condition issue could be presented to the jury, and (3) the district court erred in instructing the jury on contributory negligence.  We affirm.

I.

Sauer is employed by BN as a machinist to do repairs and maintenance on locomotives. On January 6, 1992, Sauer's lower back began hurting after he worked over the side of a locomotive engine for approximately 45 minutes as he replaced a locomotive exhaust gasket.  The pain radiated down his left leg to the knee.  Because the pain persisted, Sauer reported it to his employer and sought treatment from his chiropractor, Dr. Wills.  In addition to his primary complaint of low back and leg pain, Sauer reported some popping and cracking in his neck and numbness in his left arm down to his hand every two or three days.  Dr. Wills diagnosed the injury as a lumbar strain or sprain, with lumbar fixation (vertebra out of place and fixed in position) and low back pain.  He also noted degenerative changes in the lumbar vertebrae that did not interfere with the spinal cord and an abnormal curvature of the spine caused by unequal leg length.  BN placed Sauer on light duty and his back problem appeared to improve, although some activities aggravated the pain.

On January 23, 1992, another BN machinist, Roland Snyder, asked Sauer to help him replace a locomotive radiator hatch.  Sauer used a crane to lift the hatch up to the locomotive,

but Snyder had difficulty bolting it down.  Snyder tried using a metal bar to pry the hatch down so it could be bolted and then, for more leverage, he climbed up on the locomotive's four-foot handrail, in violation of a company safety rule.  Sauer knew this was unsafe because he had fallen from a rail several years earlier, but he did not warn Snyder or suggest another method.  Snyder did not get down from the rail when another machinist, Jane Inglebright, suggested that he use a moveable platform rather than stand on the rail.  Snyder placed one foot on the gate of a guardrail on a nearby concrete platform.  The gate was unlatched and Sauer and Inglebright tried unsuccessfully to latch it.  Snyder fell when the gate swung open.  Sauer tried to get out of the way, but Snyder landed on him, knocking him to one knee.  Sauer worked the five remaining hours of his shift, but experienced pain later that day in both his lower and upper back, with lower back symptoms similar to those following the January 6 incident.  The symptoms continued for about a month, but on February 20, Sauer began to experience severe pain after an hour-long ride home from work in his pickup truck.  An MRI revealed ruptured disks in his lumbar and cervical spine and he underwent surgery.  Sauer was eventually able to return to work.

Two claims were submitted to the jury--one based on the January 6 accident, and one based on the January 23 accident.  The jury found BN was not negligent in the January 6 accident, but that both parties were equally at fault in the January 23 accident.  On a special verdict form, the jury attributed 75 percent of Sauer's injuries to preexisting conditions and prior accidents. Accordingly, the jury award of $68,904 to compensate Sauer for the January 23 injury was reduced to $8,613 and the district court entered judgment in that amount.

II.

**A.  Assumption of the Risk Instruction Requested**

Sauer contends the district court erred by refusing to give a requested instruction on assumption of the risk. We disagree.

Assumption of the risk is not a defense under FELA. Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 57 (1943). 45 U.S.C. § 54 provides:

> "In any action brought against any common carrier [under the FELA]. . . to recover damages for injuries to . . . any of its employees, such employee shall not be held to have assumed the risks of his employment in any case where such injury . . . resulted in whole or in part from the negligence of any of the officers, agents, or employees of such carrier."

Sauer requested two instructions on assumption of the risk. The court rejected his requested instruction 32, which quoted the statute, but gave his requested instruction 11, which defined contributory negligence, and concluded with the following: "You may not find contributory negligence on the part of the Plaintiff, however, simply because he acceded to the request or direction of responsible representatives of his employer that he work at a dangerous job, or in a dangerous place, or under unsafe conditions." Appellant's append. 56.

Although instruction 11 did not use the phrase "assumption of the risk" or quote the statute, it was sufficient to prevent the jury from improperly relieving BN from liability based on assumption of the risk. In Joyce v. Atlantic Richfield Co., 651 F.2d 676, 683 (10th Cir. 1981), this court held that when the evidence could support either contributory negligence or assumption of the risk, instructions which only define contributory negligence are not sufficient to prevent the jury from applying assumption of the risk. The court held the jury instructions should also include the following admonition: "You may not find contributory negligence on the part of the plaintiff, however, simply because he acceded to the request or direction of the responsible representatives of his employer that he work at a dangerous job, or in a dangerous place, or under unsafe conditions." Id. at 683 (quoting Devitt and

-4-

Blackmar, Fed. Jury Prac. and Instructions (3d ed.), § 94.16). The same instruction has been held sufficient by other circuits. See Fashauer v. New Jersey Transit Rail Operations, 57 F.3d 1269, 1280 (3d Cir. 1995); Jenkins v. Union Pacific R. Co., 22 F.3d 206, 209-10, 212 (9th Cir. 1994); Gish v. CSX Transp., 890 F.2d 989, 993 (7th Cir. 1989). Because instruction 11 was sufficient, the district court did not err in refusing to give requested instruction 32.

## B. Expert Testimony Apportioning Injury

Sauer contends there was insufficient evidence from which the jury could apportion his injuries between his preexisting condition and aggravation of that condition as a result of BN's negligence. Specifically, Sauer argues there must be expert testimony presented which apportions his injuries on a percentage basis between his preexisting condition and the workplace accidents before the jury can be asked to apportion his injuries. We disagree.

The district court gave the following instruction on aggravation of a preexisting condition:

> "If you find for the Plaintiff, you should compensate him for any aggravation of an existing disease or physical defect resulting from such injury. If you find that there was an aggravation, you should determine, if you can, what portion of the Plaintiff's condition resulted from the aggravation and make allowance in your verdict only for the aggravation. However, if you cannot make that determination or if it cannot be said that the condition would have existed apart from the injury, you should consider and make allowance in your verdict for the entire condition."

Appellant's append. 69. The special verdict forms submitted to the jury asked for the percentage of damages from each of the two accidents attributable to preexisting conditions or prior accidents. The jury found BN was negligent only in the second accident and found 75 percent of Sauer's damages were attributable to preexisting conditions or prior accidents.

We conclude there was sufficient evidence to permit the jury to apportion Sauer's injuries between his preexisting conditions and BN's negligence. We reject Sauer's argument that there must be expert testimony precisely apportioning the injury on a percentage basis between preexisting conditions and prior accidents. The extent to which an injury is attributable to a preexisting condition or prior accident need not be proved with mathematical precision or great exactitude. The evidence need only be sufficient to permit a rough practical apportionment. Kegel v. United States, 289 F. Supp. 790, 794-97 (D. Mont. 1968); LaMoureaux v. Totem Ocean Trailer Exp., 632 P.2d 539, 544-45 (Alaska 1981); Glassman v. St. Joseph Hosp., 631 N.E.2d 1186, 1213 (Ill. App. 1994); Dafler v. Raymark Industries, 611 A.2d 136, 140-46 (N.J. Super. 1992), aff'd 622 A.2d 1305 (N.J. 1993); Restatement (Second) of Torts § 433A, comment b (1965); W. Page Keeton, Prosser and Keeton on the Law of Torts § 52, pp. 345, 348-52 (5th ed. 1984). See Steinhauser v. Hertz Corp., 421 F.2d 1169, 1170 (2d Cir. 1970); Henderson v. United States, 328 F.2d 502, 503-04 (5th Cir. 1964). Although apportionment may be difficult, like comparative negligence it is a question for which juries are well suited. See Steinhauser, 421 F.2d at 1174; Kegel, 289 F. Supp. at 797; Scafidi v. Seiler, 574 A.2d 398, 408 (N.J. 1990).

Apportionment can be proved without expert testimony stating the percentage of injury attributable to the different causes. Morris v. Rogers, 456 P.2d 863, 865 (N.M. 1969). See McKinnon v. Kwong Wah Restaurant, 83 F.3d 498, 506-07 (1st Cir. 1996); Glassman, 631 N.E.2d at 1212-13; see also Smith v. Beaty, 639 N.E.2d 1029, 1033-35 (Ind. App. 1994) (expert testimony not required to prove which impact caused injury). When there is evidence that defendant's negligence aggravated a preexisting condition but expert testimony does not precisely apportion the injury, apportionment is an issue for the jury. Newbury v. Vogel, 379

P.2d 811, 812-13 (Colo. 1963); <u>Wise v. Carter</u>, 119 So.2d 40, 42 (Fla. App. 1960); <u>Becker v. D & E Distributing Co.</u>, 247 N.W.2d 727 (Iowa 1976); <u>Dafler,</u> 611 A.2d at 140-46; <u>Bigley v. Craven</u>, 769 P.2d 892, 893-98 (Wyo. 1989). <u>But see Borman v. Raymark Industries,</u> 960 F.2d 327 (3d Cir. 1992); <u>Martin v. Owens-Corning Fiberglas Corp.</u>, 528 A.2d 947 (Pa. 1987) (insufficient evidence presented to permit jury to apportion plaintiff's condition between asbestos exposure and smoking).

We conclude there was sufficient evidence to support the apportionment instruction. A chiropractor, Dr. Wills, and two neurosurgeons, Dr. Wirt and Dr. Beehler, agreed Sauer had preexisting degenerative changes in his upper and lower back that made him more susceptible to injury. Sauer sustained two distinct serious injuries, a ruptured disk in his lower back and a ruptured disk in his upper back. In Dr. Wills' opinion, Sauer ruptured the lower back disk in the January 6 accident, in which the jury found BN not at fault, and the upper back disk in the January 23 accident, in which the jury found BN 50 percent at fault. Thus, there was evidence that a substantial, identifiable portion of Sauer's injuries was not attributable to BN's negligence. Because there was evidence that the injuries were distinct, they could be apportioned by the jury. <u>See</u> Restatement (Second) of Torts § 433A(1)(a) and comment b. Moreover, the evidence provided a basis for apportioning the injuries between the preexisting condition and the January 23 accident, in which the jury found BN 50 percent at fault. Sauer's preexisting condition made him more susceptible to injury. He had few symptoms and no significant disability from his preexisting back condition prior to the accidents in January 1992.

It is true that a defendant cannot escape liability because a preexisting condition made plaintiff more susceptible to injury. <u>See, e.g.</u> <u>Lancaster v. Norfolk and Western Ry. Co.</u>, 773

F.2d 807, 822 (7th Cir. 1985), <u>cert. denied</u> 480 U.S. 945 (1987); <u>Maurer v. United States</u>, 668 F.2d 98, 100 (2d Cir. 1981); <u>Gorman v. Prudential Lines,</u> 637 F. Supp. 879, 881 (S.D. N.Y. 1986); <u>Kegel</u>, 289 F. Supp. at 795; Restatement (Second) of Torts § 461 (1965). However, one of the preexisting condition instructions told the jury to reduce the damages by the likelihood that Sauer would eventually have suffered the injury even if the accident had not occurred. Sauer does not challenge that instruction on appeal, and in any case, it was a correct statement of the law. <u>See, e.g.</u>, <u>Lancaster</u>, 773 F.2d at 822-23 (FELA case); <u>Maurer</u>, 668 F.2d at 100 (2d Cir. 1981); <u>Steinhauser</u>, 421 F.2d at 1173-74; <u>Sweet Milk Co. v. Stanfield</u>, 353 F.2d 811, 813 (9th Cir. 1965); <u>Henderson</u>, 328 F.2d at 504; <u>Evans v. United Arab Shipping Co.</u>, 790 F. Supp. 516, 519 (N.J. 1992), <u>aff'd</u> 4 F.3d 207 (3d Cir. 1993), <u>cert. denied</u> 510 U.S. 1116 (1994) (Jones Act case applying FELA). <u>But see</u> <u>Gorman</u>, 637 F. Supp. at 881. Sauer's only objection to the instruction at trial was that it was not supported by the evidence.

There was evidence to support the instruction. Dr. Beehler testified it was possible that Sauer's degenerative condition would eventually have worsened if the accidents had not occurred, although there was no way to tell whether it would eventually cause symptoms. Dr. Wills testified the degenerative process would lead to problems over time or because of some "exciting cause" or trauma. There was expert testimony that while healthy disks are hard to rupture, degenerated disks rupture very easily. Although Dr. Wirt could not predict how the degenerative condition would have progressed, he testified that "little insignificant" events, such as getting in and out of a compact car, bending down to pick up a newspaper, stepping off a curb or a locomotive, or riding in a bumpy pickup truck could rupture a degenerated disk. Dr. Beehler agreed such actions could cause a degenerated disk to rupture.

-8-

Given Sauer's high level of strenuous physical activity, this evidence could reasonably support a finding that Sauer would probably have ruptured the disk in his upper back in the future if the accident had not occurred. See Kegel, 289 F.Supp. at 792-97. The evidence provided a basis for apportioning some of Sauer's injuries to the preexisting condition.

## C. Contributory Negligence Instruction Given

BN's contributory negligence theory was that Sauer negligently failed to warn Snyder to get off the railing. Sauer contends the evidence established as a matter of law that he was not contributorily negligent in the second accident, and that it was erroneous to give a contributory negligence instruction. He argues the evidence established that a warning would have been futile because Snyder was headstrong, had ignored Inglebright's warning, and would not have listened to anyone. We disagree.

Rivera v. Farrell Lines, 474 F.2d 255 (2d Cir.), cert. denied 414 U.S. 822 (1973), does not support Sauer's argument that he was not contributorily negligent as a matter of law. In Rivera, there was evidence that plaintiff's superiors had been warned repeatedly about the open and obvious hazard that caused plaintiff's injury, but did nothing about it. The court did not hold that as a matter of law, plaintiff was not contributorily negligent for failing to tell his superiors of the hazard. The court held only that on remand, the contributory negligence instruction should advise the jury that plaintiff had no duty to perform a futile act.

Here, Sauer requested that the contributory negligence defense be stricken on the ground that a warning would have been futile. After the court denied that request, Sauer did not request a futile act instruction, but was free to argue and did argue that a warning would have been futile. The evidence did not establish as a matter of law that a warning would

have been futile. There was evidence that Snyder did not hear Inglebright's suggestion that he use a platform rather than stand on the rail, and that Snyder would have considered recommendations by Sauer. Whether a warning would have been futile was a question of fact for the jury.

Sauer argues his actions did not constitute contributory negligence but assumption of the risk, which is not a defense under FELA. However, assumption of the risk and contributory negligence are not mutually exclusive; the evidence in a case may support either defense. See Fashauer, 57 F.3d at 1275-76; Restatement (Second) of Torts § 496A, comment d and § 496C, comment g (1965); Prosser and Keeton on the Law of Torts § 68, p. 481-82. That is why a jury instruction stating assumption of the risk is not a defense is given in FELA cases. E.g., Joyce, 651 F.2d at 682-83. The fact that Sauer's actions may have amounted to assumption of the risk does not preclude his actions from also being contributory negligence.

In his reply brief, Sauer contends his failure to warn Snyder could not be contributory negligence because it did not "add new dangers to conditions that the employer negligently created or permitted to exist." The quoted language appears in several FELA contributory negligence cases. See, e.g., Birchem v. Burlington Northern R. Co., 812 F.2d 1047, 1049 (8th Cir. 1987). However, contributory negligence includes failure to use ordinary care under existing circumstances for one's own safety, such as failure to report a hazard and failure to use due care when encountering a hazard. See Hose v. Chicago Northwestern Transp. Co., 70 F.3d 968, 978-79 (8th Cir. 1995); Fashauser, 57 F.3d at 1280-81. In Rivera, the contributory negligence theory was plaintiff's failure to warn his superiors of the hazard, and the court did not hold it could not constitute contributory negligence. The court held only

-10-

that it would not be contributory negligence if the warning would have been futile. 474 F.2d at 258. In <u>Joyce</u>, the district court instructed the jury that contributory negligence included failure to use ordinary care under existing circumstances, failure to keep a watch on surrounding conditions, and failure to notice reasonably observable danger. 651 F.2d at 683. Arguably, such omissions would not add new dangers. However, the only defect this court found in the instruction was omission of an admonition that assumption of risk was not a defense.

Sauer's supplemental authority cites rescue doctrine cases under which a plaintiff who is injured trying to rescue a co-worker can be held contributorily negligent only for wanton or reckless conduct. He did not raise this issue in his opening brief and cannot raise it for the first time in a reply brief or later filing. <u>See Codner v. United States</u>, 17 F.3d 1331, 1332, n. 2 (10th Cir. 1994). In any case, the rescue doctrine does not apply here. BN's contributory negligence theory was not that Sauer acted negligently in trying to prevent Snyder's fall; rather, it was that he negligently failed to warn Snyder to get off the railing, which he could have done before he attempted to rescue Snyder by latching the gate.

AFFIRMED.