SCHELLHAS, Judge
Following a jury verdict in this case arising under the Federal Employers Liability Act, appellant challenges the district court's grant of judgment as a matter of law to respondent and argues that the *565 court erred in applying the federal postjudgment interest rate. Respondent challenges the court's denial of its motion for a new trial. We affirm in part and reverse in part.
FACTS
Respondent BNSF Railway Company (BNSF) employed appellant James Alby for approximately 20 years as a conductor and engineer. In January 2014, Alby experienced back pain and could not move. Alby's treating orthopedic surgeon and medical-causation expert, Dr. Stefano Sinicropi, concluded that Alby suffered from degenerative disc disease and a disc herniation. Beginning in the spring of 2014, Alby underwent multiple medical procedures to address his back injury.
In June 2014, Alby sued BNSF under the Federal Employers Liability Act (FELA), 45 U.S.C. § 51, alleging that BNSF's negligence, including violations of federal track standard regulations and the Locomotive Inspection Act (LIA), 49 U.S.C. § 20701 (2012), caused his back injury. BNSF moved to exclude Alby's proffered expert opinion, including that of Dr. Sinicropi, and moved for summary judgment. The district court denied BNSF's motions and the case proceeded to trial by jury.
Alby testified at trial, along with Beau Price (BNSF's Director of Locomotive and Air Brake Systems), Dennis Luft (Alby's coworker at BNSF), Alan Blackwell (engineer), Dr. Robert Andres (ergonomist), and Dr. Sinicropi (Alby's medical-causation expert). The jury returned a special verdict in Alby's favor, finding that BNSF violated the LIA and that the violations caused, in whole or in part, Alby's back injury. The jury also found that BNSF did not violate any federal track regulations and was not negligent. The jury awarded Alby $1,888,264.90 in damages. The district court ordered collateral offsets to the award and ruled that the federal postjudgment interest rate is applicable to the resulting judgment of $1,524,663.79.
BNSF moved for judgment as a matter of law (JMOL) and, in the alternative, a new trial. The district court granted JMOL to BNSF, vacated the judgment in favor of Alby, and dismissed Alby's claims. The court also denied BNSF's motion for a new trial.
This appeal follows.
ISSUES
I. Did the district court err by granting JMOL to BNSF?
II. Did the district court err by concluding that the federal postjudgment interest rate applies?
III. Did the district court abuse its discretion by denying BNSF's motion for a new trial?
ANALYSIS
I.
Although the district court agreed with the jury's special verdict-that BNSF violated the LIA by using faulty shock absorbers and seats in the locomotives in which Alby rode-the court granted JMOL to BNSF, concluding that Alby had failed to establish causation between BNSF's LIA violations and his injuries. Alby argues that the district court erred by granting BNSF's motion. A district court should grant JMOL
only in those unequivocal cases where (1) in light of the evidence as a whole, it would clearly be the duty of the district court to set aside a contrary verdict as being manifestly against the entire evidence, or where (2) it would be contrary to the law applicable to the case.
*566 Jerry's Enters., Inc., v. Larkin, Hoffman, Daly & Lindgren, Ltd. , 711 N.W.2d 811, 816 (Minn. 2006) (quotation omitted); Diesen v. Hessburg , 455 N.W.2d 446, 452 (Minn. 1990) (stating that district court should not grant JMOL unless the evidence is practically conclusive against the verdict and reasonable minds can reach only one conclusion or when the jury's findings are contrary to the law applicable in the case).
"A motion for judgment as a matter of law is reviewed de novo." Daly v. McFarland , 812 N.W.2d 113, 119 (Minn. 2012). Appellate courts do not set aside a jury's verdict "if it can be sustained on any reasonable theory of the evidence." Pouliot v. Fitzsimmons , 582 N.W.2d 221, 224 (Minn. 1998). "Viewing the evidence in a light most favorable to the nonmoving party, [an appellate] court makes an independent determination of whether there is sufficient evidence to present an issue of fact for the jury." Jerry's Enters. , 711 N.W.2d at 816.
Alby's claim originates under FELA. "Under FELA, a railroad 'shall be liable in damages to any employee suffering injury from the negligence' of the railroad or its employees." Kinworthy v. Soo Line R.R. , 860 N.W.2d 355, 357 (Minn. 2015) (quoting 45 U.S.C. § 51 ). A "railroad employee may bring a FELA claim in either state or federal court." Id. ; see 45 U.S.C. § 56 (2012) ("The jurisdiction of the courts of the United States under this chapter shall be concurrent with that of the courts of the several States."). FELA provides that " '[e]very common carrier by railroad ... shall be liable in damages to any person suffering injury while he is employed by such carrier ... for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier.' " CSX Transp., Inc. v. McBride , 564 U.S. 685, 691, 131 S.Ct. 2630, 2636, 180 L.Ed.2d 637 (2011) (quoting 45 U.S.C. § 51 ). FELA's causation language "is as broad as could be framed," and the Supreme Court has "recognized that, in comparison to tort litigation at common law, a relaxed standard of causation applies under FELA." Id . at 691-92, 131 S.Ct. at 2636 (quotations omitted).
FELA allows a railroad employee to bring a claim for a violation of the LIA, which imposes a duty to provide safe equipment on interstate railroads but does not provide a right of action to injured employees. Kinworthy v. Soo Line R.R. , 841 N.W.2d 363, 365 n.1 (Minn. App. 2013) (citing Urie v. Thompson , 337 U.S. 163, 188-89, 69 S.Ct. 1018, 1033-34, 93 L.Ed. 1282 (1949) ), aff'd , 860 N.W.2d 355 (Minn. 2015). The LIA prohibits the use of a locomotive unless it "and its parts and appurtenances (1) are in proper condition and safe to operate without unnecessary danger of personal injury." 49 U.S.C. § 20701. "Proof of an LIA violation is sufficient to establish negligence as a matter of law under FELA." Kinworthy , 841 N.W.2d at 365 n.1.
If an employee can prove negligence and that the railroad's negligence "played any part, even the slightest, in producing the injury, then the carrier is answerable in damages," even if the injury or manner in which it occurred was not "probable or foreseeable." McBride , 564 U.S. at 703-04, 131 S.Ct. at 2643 (quotations, citations, and emphasis omitted); see, e.g. , Rogers v. Missouri Pacific R.R. , 352 U.S. 500, 501-02, 77 S.Ct. 443, 446, 1 L.Ed.2d 493 (1957) (affirming jury verdict in FELA action when employee was injured after slipping while clearing brush away from tracks and attempting to escape flames that a passing train blew in his direction);
*567 Gallick v. Baltimore & Ohio R.R. , 372 U.S. 108, 109, 83 S.Ct. 659, 661, 9 L.Ed.2d 618 (1963) (affirming jury verdict in FELA action when employee had leg amputated from bug bite infected by fetid pool that railroad allowed to accumulate near its right-of-way).
Here, the jury found that BNSF violated the LIA and that the violation was "a cause, in whole or in part, of Mr. Alby's back injury." Following BNSF's posttrial motion for JMOL, the district court agreed that BNSF violated the LIA by using ineffective seats and shock absorbers but concluded that "several substantial defects in Alby's evidence of causation" existed. For example, the court noted that Alby's medical-causation expert, Dr. Sinicropi, failed to provide the necessary causation evidence for Alby to succeed with his claim because he "never tied the specific LIA violations" to Alby's injuries. The court also discredited Dr. Sinicropi's testimony for lacking proper foundation because he allegedly depended on "common sense" rather than his expert qualifications to form his opinion and because he did not perform a differential etiology to help form his opinion. Alby argues that he presented ample evidence to support the jury's verdict that BNSF's LIA violations caused in whole, or in part, his injuries. We agree.
The Supreme Court established a "relaxed standard of causation" in Rogers , explaining that in FELA cases, "the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest , in producing the injury or death for which damages are sought." 352 U.S. at 506, 77 S.Ct. at 448 (emphasis added); see also McBride , 564 U.S. at 704-05, 131 S.Ct. at 2644 (rejecting requirement that FELA causation requires the injury to be the "natural and probable" cause of the defendant's negligence). "A long line of FELA cases reiterate the lesson that the statute vests the jury with broad discretion to engage in common sense inferences regarding issues of causation and fault." Harbin v. Burlington N. Ry. , 921 F.2d 129, 132 (7th Cir. 1990) ; see Rogers , 352 U.S. at 510, 77 S.Ct. at 450-51 ("The decisions of this Court ... teach that the Congress vested the power of decision in these actions exclusively in the jury in all but the infrequent cases where fair-minded jurors cannot honestly differ whether fault of the employer played any part in the employee's injury."). Juries have decided FELA cases in plaintiffs' favor upon "far more tenuous proof-evidence scarcely more substantial than pigeon bone broth." Harbin , 921 F.2d at 132.
BNSF is correct that Dr. Sinicropi did not refer to defective seats or shock absorbers in his report, but Dr. Sinicropi stated that "Alby's occupational exposures were a cause, in whole or in part," of his injuries. He also stated that "repeated exposure" to "whole-body vibration, shocks, jolts, vertical bouncing, and rocking back and forth ... can and does cause premature and progressive degeneration of the spine." Dr. Sinicropi then stated:
[T]he general understanding is they're, you know, being thrown around, kind of bouncing up and down on their, on their seats. The word that is thrown around by many of these folks is they have a very rough ride, and that's come up in, in previous testimony before. And we've also heard patients who have said that it's like being in a hundred accidents, and I don't remember if the term is a hundred accidents a day or a thousand accidents a day, but neither are pleasant.
Dr. Sinicropi concluded that Alby's cumulative-trauma back injury was caused by "his occupation as an engineer and going through the riding conditions that he did."
Dr. Sinicropi's report and testimony clearly connect Alby's "rough riding,"
*568 while a BNSF conductor and engineer, to Alby's back injuries. Based on the evidence, the jury could reasonably attribute the "rough riding" to either the defective seats or shock absorbers. Under FELA's "relaxed causation standard," we need only decide if any evidence exists showing that BNSF's violations of the LIA played any part, even the slightest, in Alby's injuries. Under the applicable relaxed standard of proof, we conclude that Alby provided adequate evidence that BNSF's LIA violations caused his injuries.
Because the record supports the jury finding on causation, we conclude that the district court erred in granting BNSF's motion for JMOL. We therefore reverse the court's grant of JMOL for BNSF and reinstate the judgment in Alby's favor. See Blair v. Baltimore & Ohio R.R. , 323 U.S. 600, 602, 65 S.Ct. 545, 546, 89 L.Ed. 490 (1945) ("To deprive railroad workers of the benefit of a jury trial in close or doubtful cases is to take away a goodly portion of the relief which Congress has afforded them." (quotation omitted) ); see also George v. Estate of Baker , 724 N.W.2d 1, 6 (Minn. 2006) (stating that appellate courts in Minnesota "will not disturb a jury's answer to special verdict questions if it can be reconciled on any theory, and will set aside a special verdict answer only if it is perverse and palpably contrary to the evidence" (quotation omitted) ).
II.
Alby argues that if we reinstate the judgment in his favor, we also should rule that the rate of postjudgment interest is governed by Minnesota law, not federal law, because postjudgment interest is a procedural matter to which state law should apply.[1] Citing Monessen Sw. Ry. v. Morgan , 486 U.S. 330, 108 S.Ct. 1837, 100 L.Ed.2d 349 (1988), the district court ruled that the postjudgment interest rate is governed by federal law. Alby argues that the district court erred. We disagree.
State and federal courts maintain concurrent jurisdiction over FELA claims, with plaintiffs choosing between the two to litigate a FELA claim. 45 U.S.C. § 56 (2012). Under a FELA claim in state court, "federal law governs all substantive matters, but procedural matters are subject to state procedural rules." Kinworthy , 860 N.W.2d at 357 ; see also Boyd v. BNSF Ry. , 874 N.W.2d 234, 237 (Minn. 2016) ("More than 100 years ago, the United States Supreme Court held that FELA occupies the field of railroad employees' personal injury claims against their employers in interstate commerce.... FELA preempts state substantive law-but not state procedural law-in state court FELA actions." (citations and emphasis omitted) ). Federal law, not state law, determines whether a law is procedural or substantive. Kinworthy , 860 N.W.2d at 357.
Thus, a state court faced with the question of whether a particular issue in the case is governed by federal or state law must determine whether the issue is a "procedural" matter in which the state applies its own law, or a "substantive" matter in which the state applies federal law.
*569 Id . We review de novo whether FELA preempts state law. See Boyd , 874 N.W.2d at 237 (stating that whether FELA preempts state law "presents a question of law, which [an appellate court] review[s] de novo").
"[Q]uestions concerning the measure of damages in a FELA action are federal in character." Norfolk & W. Ry. v. Liepelt , 444 U.S. 490, 493, 100 S.Ct. 755, 757, 62 L.Ed.2d 689 (1980). In Monessen , applying a two-step substantive-procedural test to determine whether state or federal law applies to prejudgment interest in a FELA case, the Supreme Court addressed whether prejudgment interest in a FELA case constituted a part of the "proper measure of damages" and therefore was subject to federal law. 486 U.S. at 335-39, 108 S.Ct. at 1842-44. Because "the proper measure of damages under the FELA is inseparably connected with the right of action and therefore is an issue of substance," the Supreme Court concluded that federal law applies to the question of prejudgment interest. Id. at 335, 108 S.Ct. at 1842. Then, the Supreme Court discussed the federal interest statute, 28 U.S.C. § 1961, noting its silence regarding prejudgment interest, and therefore considered the legislative intent and history of the statute and that "federal and state courts have held with virtual unanimity over more than seven decades that prejudgment interest is not available under ... FELA." Id . at 336-39, 108 S.Ct. at 1843-44. The Supreme Court concluded that prejudgment interest is not available for FELA plaintiffs in state court. Id. at 339, 108 S.Ct. at 1844.
Here, utilizing Monessen 's two-part procedural-substantive test, we conclude that postjudgment interest constitutes a part of a FELA plaintiff's "proper measure of damages," and that postjudgment interest therefore is an issue of substance that is governed by federal law. Our conclusion that postjudgment interest is substantive "is consistent with the principles of national uniformity intended by Congress when it enacted FELA." See Kinworthy , 860 N.W.2d at 360 ("A plaintiff who brings a FELA action in state court should be subject to the same rule regarding prejudgment interest regardless of the state in which the action is commenced."). Because the state interest rate is nearly 20 times the federal interest rate, the application of Minnesota's postjudgment interest rate in FELA cases could "create a disparity in FELA cases based solely on whether the plaintiff's claim is brought in federal or state court." See Boyd , 874 N.W.2d at 239-40 (concluding that cost-doubling rule was substantive because it created $60,000 in double costs). Because we conclude that the district court did not err in determining that postjudgment interest is a substantive matter in a FELA case, we affirm the application of the federal rate.
III.
BNSF argues that we should reverse the district court's denial of its motion for a new trial because the district court abused its discretion by admitting Dr. Sinicropi's testimony and failing to give the jury BNSF's proposed apportionment jury instruction. We disagree.
"[An appellate court] review[s] a district court's new trial decision under an abuse of discretion standard." Moorhead Econ. Dev. Auth. v. Anda , 789 N.W.2d 860, 892 (Minn. 2010). An appellate court "will not set aside a jury verdict on an appeal from a district court's denial of a motion for a new trial unless it is manifestly and palpably contrary to the evidence viewed as a whole and in the light most favorable to the verdict." Navarre v. S. Wash. Cty. Sch. , 652 N.W.2d 9, 21 (Minn. 2002) (quotations omitted). We generally *570 defer to the district court's denial of a new trial on the grounds that the evidence justifies the verdict because "[a] district court is in a better position than an appellate court to assess whether the evidence justifies the verdict." Clifford v. Geritom Med., Inc. , 681 N.W.2d 680, 687 (Minn. 2004).
A.
The district court ruled in a pretrial order that Alby could admit Dr. Sinicropi's testimony because as "a treating physician with a great deal of experience in treating patients with similar backgrounds and injuries," Dr. Sinicropi would "have opinions regarding the cause of his patient's injuries that would lead him to advise his patient about precautions and work restrictions." Dr. Sinicropi testified about Alby as his patient; he discussed the results of his examinations of, and treatment provided to, Alby; he testified about his experience treating other railway employees for injuries similar to Alby's; and he explained that he relied on Alby's job description in developing his opinion.
BNSF argues that Dr. Sinicropi "repeatedly asserted that he was not qualified to opine on what specific job duties or forces caused Alby's degenerative back condition because it is outside the scope of his expertise," and that the court abused its discretion by admitting his testimony because he was not qualified "to opine specifically on LIA causation" and his opinion lacked a reliable foundation. In denying BNSF's motion for a new trial, the district court concluded that because BNSF subjected Dr. Sinicropi "to rigorous cross-examination on the foundation" for his opinion, BNSF was not "prejudiced by testimony that [it] heavily contested" and was "contradicted by the testimony of [its] own experts."
Minnesota appellate courts "review a district court's evidentiary rulings, including rulings on foundational reliability, for an abuse of discretion." Doe v. Archdiocese of St. Paul , 817 N.W.2d 150, 164 (Minn. 2012). A court abuses its discretion when "its decision is based on an erroneous view of the law or is inconsistent with the facts in the record." Hudson v. Trillium Staffing , 896 N.W.2d 536, 540 (Minn. 2017) (quotation omitted). Even if we would have reached a different decision regarding the sufficiency of foundation, we will not reverse the district court's decision absent a clear abuse of discretion. Gross v. Victoria Station Farms, Inc. , 578 N.W.2d 757, 761 (Minn. 1998) ; see also Kumho Tire Co. v. Carmichael , 526 U.S. 137, 142, 119 S.Ct. 1167, 1171, 143 L.Ed.2d 238 (1999) ("[T]he law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." (emphasis omitted) ).
Minnesota Rule of Evidence 702 provides that:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise. The opinion must have foundational reliability.
Under rule 702 : (1) the witness must qualify as an expert; (2) the expert's opinion must possess a foundational reliability; (3) the testimony must help the trier of fact; and (4) if the testimony involves a novel scientific theory, it must satisfy the Frye-Mack standard. Archdiocese of St. Paul , 817 N.W.2d at 164. A district court admits an expert's opinion based on the preponderance of the evidence.
*571 In re Source Code Evidentiary Hearings in Implied Consent Matters , 816 N.W.2d 525, 538-39 (Minn. 2012) ("[W]e hold that the preponderance of the evidence standard applies to preliminary questions concerning the admissibility of evidence.").
Citing to only a single supporting case, Smith v. CSX Transp., Inc. , 343 Ga.App. 508, 806 S.E.2d 890 (2017), BNSF argues that the court should have rejected Dr. Sinicropi's testimony because he adopted Alby's history as his causation opinion and opined that Alby's work history caused his injury. Smith does not bind this court. See Minneapolis Grand, LLC v. Galt Funding LLC , 791 N.W.2d 549, 556 (Minn. App. 2010) ("Neither unpublished opinions of this court, nor decisions from foreign jurisdictions, are binding precedent."). Regardless, Smith is inapposite. In Smith , the Georgia Court of Appeals affirmed summary judgment in favor of the railroad because the plaintiff's expert causation testimony was inadmissible due to a lack of foundational reliability. 806 S.E.2d at 895-97. That expert, unlike Dr. Sinicropi, was not the plaintiff's treating physician, only saw the employee for one hour, failed to obtain information about the employee's job, and erroneously relied on sports-medicine literature linking weightlifting to the employee's injuries. Id . at 894-95.
In this case, Alby's causation expert, Dr. Sinicropi, a physician at the Midwest Spine Institute in Stillwater, Minnesota, was Alby's treating physician. Dr. Sinicropi's curriculum vitae and testimony reveal that he received his Doctor of Medicine from Columbia University in 1999 and served as chief resident in orthopedic surgery from 2004 to 2005. He is a fellow in the American Academy of Orthopedic Surgeons and has published multiple academic articles and book chapters on orthopedic surgery and treatment. Dr. Sinicropi conducts "around 700 surgeries a year" in 20 locations of the Midwest Spine Institute and has treated "several patients" for spinal injuries related to their work as railroad workers.
Dr. Sinicropi obtained and reviewed Alby's relevant medical history and job duties, and he met with and treated Alby multiple times. In addition to his knowledge gained treating Alby, Dr. Sinicropi based his causation opinion on his experience treating numerous patients with similar injuries, not on allegedly analogous sports-medicine experience, as in Smith . And BNSF rigorously cross-examined Dr. Sinicropi about Alby's injuries and the basis for his causation opinion, and offered its own expert's opinions, which contradicted Dr. Sinicropi's opinion. BNSF's cross-examination allowed the jury to weigh Dr. Sinicropi's opinion against its own expert. See Raze v. Mueller , 587 N.W.2d 645, 648 (Minn. 1999) ("When there is conflicting medical testimony as to the nature and extent of a plaintiff's injuries, we give great deference to the jury's verdict."); see also Kinning v. Sutton , 300 Minn. 555, 555-56, 220 N.W.2d 485, 486 (1974) (affirming denial of defendant's motion for new trial where evidence about plaintiff's alleged injury was in "sharp conflict"). We conclude that the district court did not abuse its discretion by admitting Dr. Sinicropi's causation opinion for consideration by the jury.
B.
The district court gave the jury CIVJIG 91.40. See 4A Minnesota Practice , CIVJIG 91.40 (2017) (providing jury instruction for pre-existing condition-aggravation). BNSF argues that the district court abused its discretion and committed reversible error by giving the jury this instruction and rejecting BNSF's proposed apportionment jury instruction. The district court has broad discretion in determining jury instructions and appellate courts do not reverse in the absence of *572 an abuse of discretion. Hilligoss v. Cargill, Inc. , 649 N.W.2d 142, 147 (Minn. 2002). "An instruction that is so misleading that it renders incorrect the instruction as a whole will be reversible error." Id ."Where instructions overall fairly and correctly state the applicable law, appellant is not entitled to a new trial." Id .
The "propriety of jury instructions concerning the measure of damages in a FELA action is an issue of substance determined by federal law." St. Louis Sw. Ry. Co. v. Dickerson , 470 U.S. 409, 411, 105 S.Ct. 1347, 1348, 84 L.Ed.2d 303 (1985) (quotation omitted). That a plaintiff in a FELA action "may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury." 45 U.S.C. § 53 (2012). FELA "expressly directs apportionment of responsibility between employer and employee based on comparative fault." Norfolk & W. Ry. v. Ayers , 538 U.S. 135, 161, 123 S.Ct. 1210, 1225, 155 L.Ed.2d 261 (2003). But FELA "expressly prescribes no other apportionment." Id .
BNSF argues that the district court "improperly instructed the jury to award damages for causes that were unrelated to the alleged LIA violations." It argues that "the 'occurrence' described by Alby and his witness related almost entirely to rough riding caused by track conditions, for which the jury found no BNSF negligence or violation." And, citing to Sauer v. Burlington N. R.R. , 106 F.3d 1490 (10th Cir. 1996), BNSF argues that the district court erroneously concluded that insufficient evidence supported a more detailed apportionment instruction. Although we are not bound by the Tenth Circuit decision in Sauer , we recognize that the authority might be persuasive. See State v. McClenton , 781 N.W.2d 181, 191 (Minn. App. 2010) ("We recognize that although we are not bound to follow precedent from other states or federal courts, these authorities can be persuasive."), review denied (Minn. June 29, 2010).
In Sauer , a railway employee injured his back while working and sued his employer under FELA. 106 F.3d at 1493. On appeal, the employee argued that the district court erred by granting an apportionment instruction when the evidence did not support it. Id. at 1493-94. The Tenth Circuit disagreed, affirming the jury instructions because trial testimony supported the fact that the employee's injuries may have been caused by his pre-existing degenerative disc disease had the accident not occurred. Id . at 1495.
In this case, the district court determined that apportionment jury instructions were not necessary because "there was very little evidence about Alby's prior back injuries, their seriousness, the probability that they could cause symptoms in the future, or their contribution" to Alby's injuries. Similar to Sauer , and contrary to BNSF's argument, the court's aggravation jury instruction allowed the jury to diminish Alby's damages as they felt appropriate based on the evidence presented at trial.
Moreover, as the Supreme Court emphasized in Ayers , "whether the immediate reason for an employee's injury was the proven negligence of the defendant railroad or some cause not identified from the evidence" is irrelevant. 538 U.S. at 161-62, 123 S.Ct. at 1226 (quotation omitted). Here, because the jury instructions fairly and correctly stated the applicable law, we conclude that the district court did not abuse its discretion by rejecting BNSF's proposed apportionment jury instruction and did not abuse its discretion by denying BNSF's motion for a new trial.
DECISION
Because Alby satisfied the relaxed standard of proof applicable to FELA claims, *573 by providing adequate evidence that BNSF's LIA violations caused his injuries, the district court erred by granting JMOL to BNSF. The district court did not err by ruling that the federal postjudgment interest rate applies to a state court judgment granted under FELA or abuse its discretion by denying BNSF's motion for a new trial.
Affirmed in part and reversed in part.

Under Minnesota law, judgments or awards over $50,000 accrue interest at a rate of ten percent per year until paid. Minn. Stat. § 549.09, subd. 1(c)(2) (2016). Under federal law, postjudgment interest is "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield ... for the calendar week preceding the day of judgment." 28 U.S.C. § 1961 (2006) ; see also Weitz Co. v. Mo-Kan Carpet, Inc. , 723 F.2d 1382, 1385-86 (8th Cir. 1983) ("Federal law now provides for interest from the date of judgment at a floating rate determined by the coupon yield of United States Treasury bills.").